HANLEY v. THE GRAND TRUNK RAILWAY COMPANY.

In an action against a railroad corporation for personal injuries, the plaintiff is not entitled to recover where there is no evidence of an injury except that resulting from the negligence of the plaintiff's fellow employé not representing the corporation.

CASE, for personal injuries. The declaration alleged an injury to the plaintiff while assisting, as an employé of the defendants, in loading upon a car old rails, one of which fell upon the plaintiff through the negligence of the defendants in suffering a car with a large amount of snow upon it to be used for that purpose. Another count alleged an injury through the incompetency of the defendants' agents and servants to manage the business of loading the rails, and that the plaintiff was in the exercise of reasonable care. The plaintiff introduced evidence tending to show that he had been employed by the defendants from 1855 to 1874. In 1874 he worked under one Morrill as a section-man, having charge of the track repairs on the section which included the railroad yard at Gorham. December 9, 1874, he was notified by Morrill to go the next morning down the line towards Portland, and assist in loading old rails, to be taken to the rolling-mill: he had sometimes

assisted in loading rails before. On the morning of December 10, 1874, before light, in company with Morrill and other section-men, he started upon a train made up for the purpose of collecting old iron, consisting of a brake van and about a dozen platform cars, and went down the line about a mile on to another and different section from the one on which he was employed. The rails were piled by the side of the road a convenient distance from the track for loading. When the train arrived 'at the first pile, it was stopped by Cole, who was foreman of an extra gang on the road, and who had charge of the business of collecting and loading the rails and of the train for that purpose. The men, of whom the plaintiff was one, commenced to load the rails, at Cole's direction, on to one of the platform cars. On the car was from one and a half to two and a half feet of snow. It was hard, and heaped up in the middle and falling away towards the sides of the car. How the snow came upon the car did not distinctly appear. There was evidence tending to show that the plaintiff, had no special knowledge of the condition of the car on which they began to load the rails, or of the snow upon it, until they began loading, except what was derived from seeing the train, and then he did not know how solid and hard it was. It was no part of the plaintiff's duty to make up the train, and he had nothing to do with making it up. There were ten men engaged in loading the rails. The evidence tended to show that the top of the car was about four feet above the track, and the ground on which the men stood in loading the rails was somewhat lower. The men loaded the rails by taking hold of them and raising them up and heaving them over upon the car. In attempting to load the second or third rail, it did not distinctly appear which, it struck upon the car and slipped back and fell upon the plaintiff, breaking both his legs and seriously injuring him. He was then put upon the car and carried home. There was no evidence of any incompetency of any of the defendants' servants, or that the cars on this train were not in proper condition, except the evidence of the snow upon the car on which the plaintiff was assisting to load the rails at the time he was injured. There was evidence that it was usual in loading rails to have men on the cars to assist in placing the rails as they were put on, but there was no one on this car when the accident happened. Cole was standing on the next car giving directions to the men as to the loading. The snow on this car was plain to be seen by the plaintiff when he began to assist in loading, and he testified that he blamed the snow. The car and train and men were all right. He did not know whether it was dangerous attempting to load the rails upon the car with the snow upon it. He did not think of any danger. The evidence also tended to show, that after the accident to the plaintiff the snow was shovelled off before any more rails were put upon it, and that it was nearly time for the regular train, and they were in a hurry to get the pile of rails loaded before the

regular train came along, which was expected soon.   As to Cole's
duties and authority, the evidence tended to show that he was fore-
man of an extra gang, whose duty it was to work on the line of the
road under directions from Murphy, who was road-master of that .
division of the road, assisting the section men in repairing the
worst places and in putting in side-tracks, collecting old iron, and
similar work.   The train in question was not made up under Cole's
direction, and he did not select the cars composing it.   There was
no claim or evidence of Cole's incompetency except in his not
causing the snow to be removed from the car before the loading
was commenced.

The defendants moved for a nonsuit on the ground that there
was no evidence upon which the plaintiff was entitled to recover,
and that question was reserved.

*A. S. Twitchell,* for the plaintiff, to the point that the evidence
shows negligence on the part of the defendants, cited,—*Shanny* v.
*Mills,* 66 Me. 420; *Buzzell* v. *Company,* 48 Me. 113; *Ford* v.
*Railroad,* 110 Mass. 250; *Gilman* v. *Railroad,* 10 Allen 233—
*S. C.,* 13 Allen 433; *Snow* v. *Railroad,* 8 Allen 441; *Grizzle* v.
*Frost,* 3 Fost. & F. 622; *Patterson* v. *Wallace,* 1 Macq. 748;
*Cayzer* v. *Taylor,* 10 Gray 274; *Seaver* v. *Railroad,* 14 Gray 466;
*Coombs* v. *Cordage Co.,* 102 Mass. 572; *Huddleston* v. *Machine
Shop,* 106 Mass. 282; *Railroad* v. *Swett,* 45 Ill. 197; *Schooner
Norway* v. *Jensen,* 52 Ill. 373; *Railroad* v. *Welch,* 52 Ill. 183;
*Laning* v. *Railroad,* 49 N. Y. 521; *Wedgwood* v. *Railroad,* 41
Wis. 478; *Smith* v. *Railroad,* 42 Wis. 520; *Gibson* v. *Railroad,*
46 Mo. 169; *Railroad* v. *Shannon,* 43 Ill. 338; *Fifield* v. *Rail-
road,* 42 N. H. 225; Sm. M. & S. (3d ed.) 212; Whar. Neg., ss.
205, 206, 211, and notes.

It was negligence not only in not having the car in a safe condi-
tion, but in not having a sufficient number of men to perform the
work with safety.   *Booth* v. *Railroad,* 73 N. Y. 38; *Flike* v.
*Railroad,* 53 N. Y. 549.   It was also negligence in taking the
plaintiff from his usual employment into a different and especially
more hazardous labor and service.   *Railroad* v. *Keefe,* 47 Ill. 110;
*Lawler* v. *Railroad,* 62 Me. 463.   Cole, the foreman of the gang,
represented the corporation, and his negligence was the negligence
of the defendants.   Whar. Neg., ss. 212, 232; *Wedgwood* v. *Rail-
road,* 44 Wis. 44; *Brabbits* v. *Railroad,* 38 Wis. 293; *Smith* v.
*Railroad,* 42 Wis. 526; *Bass* v. *Railroad,* 36 Wis. 450; *Craker* v.
*Railroad,* 36 Wis. 657; *Bessex* v. *Railroad,* 45 Wis. 477.

It was the duty of the defendants to furnish a suitable car and
a suitable place for the plaintiff to work in, including giving him
full notice of the nature of the risks attending the service, and
they could not escape responsibility for neglect of this duty by
delegating it to a foreman or other workmen.   *Coombs* v. *Cordage
Co.,* 102 Mass. 599, and cases cited; *Railroad* v. *Swett,* 45 Ill. 197;

*Brabbits* v. *Railroad*, 38 Wis. 293; *Corcoran* v. *Holbrook*, 59 N. Y. 517. And a servant can recover for the negligence of the agents who had the right and power to control and direct him. *Railroad* v. *Cavens*, 9 Bush 559; *Railroad* v. *Bayfield*, 37 Mich. 205; *Patterson* v. *Railroad*, 76 Pa. St. 389; *Railroad* v. *Keary*, 3 Ohio St. 201; *Railroad* v. *Devinney*, 17 Ohio St. 197; *Railroad* v. *Collins*, 2 Duv. 114; *Chamberlain* v. *Railroad*, 11 Wis. 238; *Hough* v. *Railroad*, 100 U. S. 213.

The case shows competent evidence to submit to a jury that the plaintiff was in the exercise of due care. *Railroad* v. *Jackson*, 55 Ill. 492; *Gilman* v. *Railroad*, 10 Allen 233; *Hackett* v. *Middlesex M'f'g Co.*, 101 Mass. 101; *Coombs* v. *Cordage Co.*, 102 Mass. 572; *Huddleston* v. *Machine Shop*, 106 Mass. 282; *Le Clair* v. *Railroad*, 20 Minn. 9; *Bessex* v. *Railroad*, 45 Wis. 477; *Wedgwood* v. *Railroad*, 44 Wis. 44; *Butler* v. *Railroad*, 28 Wis. 487; *Langhoff* v. *Railroad*, 19 Wis. 515; *Houfe* v. *Town of Fulton*, 29 Wis. 296; *Hoyt* v. *City of Hudson*, 41 Wis. 105; *Dorsey* v. *Company*, 42 Wis. 583; *Railroad* v. *Mahony*, 7 Bush 235; *Railroad* v. *Hoehl*, 12 Bush 41; *Stucke* v. *Railroad*, 9 Wis. 202; *Johnson* v. *Railroad*, 5 Duer 21; Shear. & Red. Neg., *s.* 11.

*Ray, Drew & Jordan,* for the defendants. The case finds "there was no evidence of any incompetency of any of the defendants' servants, or that the cars on this train were not in proper condition, except the evidence of the snow upon the car on which the plaintiff was assisting to load the rails at the time he was injured." How did the plaintiff get hurt? "The men loaded the rails by taking hold of them, raising them up, and heaving them over upon the car; that, in attempting to load the second or third rail (it did not distinctly appear which), it struck upon the car, slipped back, and fell upon the plaintiff," etc. The complaint of an insufficiency of men in number on the car to assist in placing the rails is not supported in reason; for any number of men, however great, could not have prevented the rail from falling as it did.

There was no evidence tending to show corporate negligence. The plaintiff claims to go to the jury on the naked fact that there was on the car at the time from one to two feet of hard snow, heaped in the middle. How it came there did not appear, whether from an accidental snow-slide, or from a storm while the car was on the road. To make this a ground of recovery for negligence, some notice must have been given to an officer of the corporation. *Warner* v. *Railroad*, 39 N. Y. 468, 475.

If the car was in a defective condition by reason of the snow, it was so by reason of the negligence of the plaintiff's fellow-servant, and it is unnecessary to cite authorities in support of the doctrine that there can be no recovery for an injury resulting from the negligence of the plaintiff's fellow-servant. Cole was foreman of the gang, and was only a fellow-servant. He could not

in any sense be said to represent the corporation. *Blake* v. *Railroad,* 70 Me. 60, and authorities cited by *Appleton,* C. J.; *Railroad* v. *Arnold,* 31 Ind. 174. Nor is the rule changed by the fact that the servant injured is not employed in the same kind of work as the servant who caused the injury, nor by the fact that the servant, whose negligence caused the injury, is one of superior authority, and whose directions the other is bound to obey. *Lawler* v. *Railroad,* 62 Me. 463; *Warner* v. *Railroad,* 39 N. Y. 468; *Zeigler* v. *Day,* 123 Mass. 152; *Killea* v. *Faxon,* 125 Mass. 485; 21 Albany Law Jour. 442; *Schauring* v. *Railroad,* App. Ct. of Ill., reported in 4 Railway Age 605; *Railroad* v. *Clark,* App. Ct. of Ill., 4 Railway Age 413; *Ryan* v. *Railroad,* 23 Pa. St. 384; *Sherman* v. *Railroad,* 17 N. Y. 153; *Beaulieu* v. *Company,* 48 Me. 291; *Hayes* v. *Railroad,* 3 Cush. 270; *Farwell* v. *Railroad,* 4 Met. 49; *Albro* v. *Canal Co.,* 6 Cush. 75; *Gillshannon* v. *Railroad,* 10 Cush. 228; *Seaver* v. *Railroad,* 14 Gray 466; *Shauck* v. *Railroad,* 25 Md. 462; *Thayer* v. *Railroad,* 22 Ind. 26; *Hard* v. *Railroad,* 32 Vt. 473; *Railroad* v. *Tindall,* 13 Ind. 366; *Railroad* v. *Keefe,* 47 Ill. 108; *Boldt* v. *Railroad,* 18 N. Y. 432; *Whaalan* v. *Railroad,* 8 Ohio St. 249; *Coon* v. *Railroad,* 14 Minn. 560; *Foster* v. *Railroad,* 14 Minn. 360; 1 Redf. Law Railway 520, s. 111, and cases cited in note 1.

The plaintiff saw the snow, and was in a position to apprehend the danger; and his own want of care, on the undisputed facts, so far contributed to the injury as to preclude a recovery. *Cahoon* v. *Coe,* 57 N. H. 556, 571, 572, 595; *Tidd* v. *Smith,* 3 N. H. 178; *Lewis* v. *Railroad,* 38 Md. 588; *Railroad* v. *Wilkinson,* 30 Md. 233; *Railroad* v. *McClurg,* 56 Pa. St. 294; *Railroad* v. *Price,* 29 Md. 440; *Mitchell* v. *Railroad,* 2 Hun 535; *Railroad* v. *Skinner,* 19 Pa. St. 298; *Parker* v. *Adams,* 12 Met. 415; *Smith* v. *Smith,* 2 Pick. 621; *White* v. *Winnisimmet Co.,* 7 Cush. 155, 161; *Holly* v. *Company,* 8 Gray 131, 132; *Norris* v. *Litchfield,* 35 N. H. 276; *Farnum* v. *Concord,* 2 N. H. 392; 2 Indiana Dig. (New) 1009, par. 3.

The plaintiff has the burden of showing that he was in the exercise of reasonable care. In this case there is no evidence of ordinary care on his part. *Gerety* v. *Railroad,* 81 Pa. St. 274, 277; *Gaynor* v. *Railroad,* 100 Mass. 211; *Gahagan* v. *Railroad,* 1 Allen 190; *Gavett* v. *Railroad,* 16 Gray 501; *Lucas* v. *Railroad,* 6 Gray 64; *Todd* v. *Railroad,* 3 Allen 21—*S. C.,* 7 Allen 208; *Railroad* v. *Rollins,* 5 Kan. 180; *Railroad* v. *Butts,* 7 Kan. 315; *Railroad* v. *West,* 4 Vroom 430; *Moore* v. *Railroad,* 4 Zabr. 268; *Railroad* v. *Caldwell,* 9 Ind. 397; *Railroad* v. *Brownenburg,* 32 Ind. 199; *Gagg* v. *Vetter,* 41 Ind. 228; *Innis* v. *The Senator,* 1 Cal. 459; *Felder* v. *Railroad,* 2 M'Mull. 403; *Knight* v. *Railroad,* 23 La. An. 462; *Carlisle* v. *Holton,* 3 La. An. 48; *Lesseps* v. *Railroad,* 17 La. 361; *Fleytas* v. *Railroad,* 18 La. 339; *Boland* v. *Railroad,* 36 Mo. 491; *Button* v. *Railroad,*

18 N. Y. 248; *Thompson* v. *Bridgewater*, 7 Pick. 188; *Shrews-
bury* v. *Smith*, 12 Cush. 177; *Harlan* v. *Railroad*, 64 Mo. 480;
*Railroad* v. *Collins*, 87 Pa. St. 405; *Railroad* v. *Matthews*, 7
Vroom 531; *Railroad* v. *Toffey*, 9 Vroom 525; *Harper* v. *Rail-
road*, 3 Vroom 88.

*Bingham & Aldrich*, on the same side.

*Ladd & Fletcher*, for the plaintiff, in reply.    I. That there was
evidence tending to show that the car was not in a safe and proper
condition for the use it was put to, and that the injury to the plain-
tiff was caused thereby, will not, we suppose, be controverted.  The
manner in which the injury happened furnishes strong evidence on
both those points.    *Res ipsa loquitur.*

II. That the corporation were in fault, *quoad* the plaintiff, for
the condition of the car, or, what comes to the same thing, for
using it to load the rails on while in that condition, seems to be
equally plain.

III. But the contention on the part of the defendants at the
trial was, that the evidence showed that the plaintiff's own want of
ordinary care contributed, and that this was so plain that no ques-
tion of fact in relation thereto was left open for the jury.    To be
specific, the argument was, that when the plaintiff saw the unsafe
condition of the car, it was his duty to refuse to undertake to assist
in loading the rails upon it till the snow was removed.    It was
seriously contended, as we understand the defendants' position,
that the plaintiff ought not only to have refused obedience to the
order to load the rails upon the car when he saw how unsafe it was
made by the snow upon it, but he ought to have gone further, and
in active disobedience of orders shovelled off the snow himself,
instead of loading the rails.    How long could a railroad be run if
a doctrine of that sort were carried into practice ?    You might as
well think of carrying a fort by storm with an army made up of
soldiers every one of whom is at liberty to decide for himself
whether it would not be better and safer to take it in some other
way.    Subordination and discipline are as necessary in the man-
agement of a railroad as in the conduct of an army.    If this igno-
rant old man had undertaken to set up his judgment and his will
against that of Mr. Cole, either by refusing to help load the rails
upon the car while it was in that unsafe condition, or by shov-
elling off snow when he was ordered to take hold of the rails
and help put them upon the car, everybody knows (as was indeed
admitted by Cole himself on the stand) that his employment by
the corporation would be that instant ended forever.    Everybody
knows that the plaintiff's subordination to his superiors in that
service was, and from the nature of the employment must be, as
absolute and unqualified as that of the common soldier to his offi-
cers in an army in the field in presence of the enemy.

But it was said that the order was not the order of the corpora-
tion. Why not? How is the order of a corporation conveyed to
its employés? We maintain that any and every order given by
any and every employé of this corporation to any other employé,
which such other employé, in the usual course of the business, is
bound to obey, is, *pro hac vice*, the order of the corporation; and
it makes not the slightest difference whether such order is given
by the president, the directors, the general manager, a superinten-
dent, a road-master, a master of transportation, a train dispatcher,
a master mechanic, a conductor, an engine driver, the boss of a
section, or any one else having by virtue of his position authority
to give the order in question. That this must be so is evident at
a glance. The corporation act by agents. Every employé who
has authority to give an order of any description to any other em-
ployé in and about the business of the corporation, of necessity
derives that authority from the corporation. *Pro hac vice* he is
therefore the agent of the corporation. *Pro hac vice* his order is
therefore the order of the corporation. *Qui facit per alium facit
per se.* The business could not be carried on a day upon any other
theory. Subordinates of every rank must obey their immediate
superior. We would not be understood as contending that there
may not be a question of fact here for the jury. The danger to
life or limb involved in obeying an order may be so certain and so
obvious that any one, even in the lowest position, who should
undertake to obey it, should be held to do so at his own risk. If,
for example, an engine driver were ordered to run his engine over
a bridge one span of which he knew had fallen into the stream be-
low, or a car-coupler to stand on the track in front of a car while
another is moved up to it, when he knows the condition of the coup-
lings to be such that he will be crushed by obeying the order,—
in such cases it will be readily admitted that the man attempting
to obey should be held to do so at his own risk. But in all such
cases it is purely a question of fact for the jury whether the peril
is so imminent, so plain to be seen, so well known and understood
by the servant, that he ought to have risked the consequences of
disobedience rather than the dangers of obedience.

And here we meet another consideration, which entitles this
plaintiff to go to the jury, namely, that it is his right to have his
own mental capacity and characteristics, as well natural as those
arising from his way of life, considered upon the question whether
he was guilty of fault in obeying the order, such as ought to pre-
vent his recovery. Here is a man employed by this corporation to
perform the most common kind of manual labor. The corporation
have no right to expect from him a degree of circumspection, fore-
sight, observation, or prudence above the average of the class to
which he belongs. The corporation knew (and are bound to all
the consequences of that knowledge) that he had long been em-
ployed in that subordinate position in their service; that obedi-

ence to superiors is a cardinal idea in that service; that the tendency of such service (calling for scarcely anything more than the use of the hands, where all the planning is done by some one else) is to induce implicit reliance upon the judgment of superiors ; that a man in such a position, who would insist on stopping to question and debate the propriety or safety of the work he is called on to perform, would be good for nothing and could not be retained; that inasmuch as he cannot be permitted to question, it soon becomes his habit not to question ; that the natural and necessary result is that he comes very soon to assume in fact, what he has a right by the law to assume, namely, that in all specific service which he is called on to perform, his safety is provided for by the superior sagacity and circumspection of his master, or, what is the same thing, of the natural person placed over him to represent the master ; that the very thing which makes him a most useful instrument in the hands of the corporation, disarms him to a certain extent of the habit and capacity of looking out for himself; in a word, that the very nature of his occupation makes it inevitable that he should rely in very many matters upon the eyes and ears as well as the judgment of his superiors, and so fall into the habit of using his own eyes and ears, as well as his own judgment, with less alacrity, particularly when engaged in performing a special order of his superior.   All this the corporation, as well as any intelligent human being, are bound to know, because they are bound to know the nature of the instruments which they employ.  And their conduct must be governed by this knowledge.  The principle is the same as that which applies in cases where children are employed. The child is held to exercise only the care of a child, because the master knows he is employing a child.  So the laborer, schooled only in the lesson of implicit obedience to superiors, is held to exercise only the care and circumspection of an untutored laborer, because the master knows he is employing such a man. See Whar. Neg., *s.* 216, and authorities cited.  It is for the jury, upon all the circumstances shown, to say whether or not the risk was wantonly assumed.   Whar. Neg., *ss.* 215, 217–219, *et seq.*

ALLEN, J.   The relation between a corporation and its employés is that of master and servant, and the general rule is that a master is not liable to a servant for an injury received from the negligence of a fellow-servant in the same general employment, the master being in no fault.  *Fifield* v. *Railroad*, 42 N. H. 225, 236 ; *Farwell* v. *Railroad*, 4 Met. 49 ; *Hayes* v. *Railroad*, 3 Cush. 270 ; *Carle* v. *Canal & Railroad Co.*, 43 Me. 269 ; *Noyes* v. *Smith*, 28 Vt. 59 ; *Brown* v. *Maxwell*, 6 Hill 592 ; *Coon* v. *Railroad*, 6 Barb. 231 ; *Ryan* v. *Railroad*, 23 Pa. St. 384 ; *Madison &c. Railroad Co.* v *Bacon*, 6 Ind. 205 ; *Honner* v. *Railroad*, 15 Ill. 550 ; *Murray* v. *Railroad*, 1 M'Mull. 385 ; *Priestley* v. *Fowler*, 3 M. & W. 1 ; *Hutchinson* v. *Railroad*, 5 Exch. 343 ; *Wigmore* v. *Jay*, 5 Exch.

354 ; *Skip* v. *Railroad*, 24 E. L. & Eq. 396. The master contracts for the use of ordinary care in furnishing suitable machinery, materials, and appliances, and servants reasonably competent and sufficient in number for the service ; and the servant, when employed, takes upon himself the apparent risks of the business and those naturally incident to the employment. *Assop* v. *Yates*, 2 Hurl. & N. 768 ; *Clarke* v. *Holmes*, 7 Hurl. & N. 937 ; *Farwell* v. *Railroad*, *supra ; Gillshannon* v. *Railroad*, 10 Cush. 228 ; *Ladd* v. *Railroad*, 119 Mass. 412. If reasonable care and diligence are exercised in the adoption of suitable machinery and appliances for carrying on the business and in the selection of competent servants, the master is not liable for an injury resulting to an employé from a defect in the machinery or from the negligence or incompetence of a fellow-servant, when he did not know or by reasonable diligence might not have known of the defect or the incompetence of the fellow-servant, and had no opportunity to prevent the injury by repairing the defect or discharging the incompetent servant. *Gibson* v. *Railroad*, 46 Mo. 163 ; *Railroad* v. *Troesch*, 68 Ill. 545 ; *Baulec* v. *Railroad*, 59 N. Y. 356 ; *Davis* v. *Railroad*, 20 Mich. 105.

In this case there is no evidence upon which it could properly be found that the car was defective through any want of care on the part of the defendants. If the snow was a defect, it could not be fairly found on the evidence that it was on the car at the time of the injury through any fault of the defendants' servants not co-servants of the plaintiff. Moreover, the defect, if there was one, was apparent. Whatever danger there was was encountered by the plaintiff, with full knowledge or abundant notice putting him on his guard. There was no concealed or unknown defect. The height of the snow was apparent, and there is no evidence of anything delusive or deceptive in its appearance, and the plaintiff had full means of knowledge. He saw the snow, and described it in his testimony. There was sufficient light to enable him to see it perfectly. It was not the first rail thrown upon the car that fell upon him, nor was this his first work of the kind. The plaintiff was accustomed to the work. On this occasion he engaged in it in the usual course of business ; and to hold that it could be fairly found that the danger into which he went was not apparent, or that he was injured by the fault of any one not a fellow-servant, would be upholding a refinement that would hardly be relied upon if the defendants were not a corporation, and regarding that as sufficient evidence to justify an action which would not be so regarded in a suit between two natural persons.

*Judgment for the defendants.*

STANLEY, J., did not sit : the others concurred.