Hillsborough, }
  June, 1898. }

## YOUNG v. BOSTON & MAINE RAILROAD.

A servant who voluntarily enters into an employment involving danger of personal injury which the master might have avoided, takes upon himself the risk of all hazards incident to the employment which are known to him, or which are plain and obvious.

A railroad employee who is injured by reason of the unfit, defective, and insufficient condition of a locomotive pilot upon which he has attempted to ride, cannot recover therefor, in the absence of evidence that he was required or expected to put the pilot to such use, that it was constructed with reference to such use, that it was customary for others so to ride, or that the railroad company knew or ought to have known of a similar practice by other employees.

In such case, the plaintiff is chargeable with contributory negligence, as matter of law, when it appears that he was an experienced employee, that he knew the locomotive in question to be of a different type from those upon which he was accustomed to work, that he had never undertaken to ride on the pilot of such an engine or known others to do so, and that, without invitation or compulsion and with ample opportunity for the exercise of judgment, he attempted to mount the pilot as the engine approached him at an unknown rate of speed.

CASE, for personal injuries in being run over by the defendants' engine, September 24, 1895, and losing the right leg. Trial by jury and verdict for the plaintiff. The defendants seasonably moved for a nonsuit, that a verdict be directed in their favor, and that the verdict against them be set aside. The motions were denied, subject to exceptions. The opinion sufficiently states the facts.

*George B. French* and *Henry E. Burnham*, for the plaintiff.

*Oliver E. Branch* and *William H. Sawyer*, for the defendants.

BLODGETT, J. As stated in his declaration, the negligence of the defendants by which the injury to the plaintiff is alleged to have been caused consisted in furnishing a road or passenger engine with a pilot, instead of a shifting engine with a step and rail, for the doing of his work as a yard hand in the shifting and handling of cars and moving them about the defendants' yard, and that " said engine was not reasonably safe for said work because it did not furnish the plaintiff with a proper step on which

to step and stand in riding from point to point, as was usual in doing the work, nor did it have a rail or flag-post thereon which the plaintiff could grasp and thereby steady his body, as was reasonably needful for his safety, but it had a pilot, so called, whose slats were defective, insufficient, and unfit for a reasonably safe footing; and the plaintiff, while in the exercise of reasonable care, and unwarned and unaware of the extra danger to which he was thus exposed, endeavoring to step upon said pilot, by reason of said defects, insufficiencies, and unfitness of said engine, was thrown down on said track and run over by said engine."

With regard to the negligence of the defendants in failing to provide a shifting engine, or in providing a road engine without a step, or rail, or flag-post thereon, it is enough to say that if thereby the plaintiff's work was rendered more hazardous than it otherwise would have been, no liability can be predicated upon such negligence. All these things were perfectly obvious to him, and the settled law, both American and English, is that if a servant chooses to enter into an employment involving danger of personal injury which the master might have avoided, he takes upon himself the risk of all the hazards incident to the employment, the existence of which is known to him, or which are plain and obvious, and that no action will lie against the master for injuries to the servant resulting from such dangers. There is no need of dwelling upon this proposition. It has passed out of the domain of discussion, and it would simply be pedantic to cite authorities in its support.

In respect of the slats, the negligence of the defendants is claimed to have been that the space between them (two and seven eighths inches) was insufficient for a safe footing, and that the iron band around the lower one did not come up quite high enough on the wood to "present a flat, horizontal surface for the foot."

So far as the defendants' negligence in these respects is concerned, it is likewise enough to say that, if the slats were defective, insufficient, and unfit for a reasonably safe footing, and if this was not so plain and obvious to the plaintiff as to come within the assumed risks of his employment, we still find " no evidence that a pilot was ever made with reference to its being used for riding," or that the slats thereon are constructed with a view " to furnishing an easy entrance to the foot or a secure foothold, or that the band is put on with that end in view," or that the defendants required or expected the plaintiff to step on or ride upon the road engine as upon a shifter, or that it was customary to do so, or that the defendants knew or ought to have known that their brakemen or switchmen ever did do so. And without such evidence, there can of course be no recovery in this case.

But beyond all this, it is entirely clear, in our opinion, that the plaintiff was himself guilty of contributory negligence barring his recovery. The situation was this: At the time of injury the plaintiff had been employed for years upon different railroads, and mostly in the capacity he was then working. He was of mature age, and as is evident from his testimony, of at least average intelligence. The accident happened about three o'clock in the afternoon of a sunshiny day. The engine in question had been used in the yard since morning. The plaintiff knew that it was a road engine with a pilot, and that it was "entirely different" from what he had been accustomed to work on. "He had never seen an engine with a pilot used before that day for shifting purposes, and had never had anything to do with a road engine for shifting work. He had never undertaken to ride on one by getting on the pilot. He had never even seen it attempted by any one." He knew, as he testified, that the pilot, or cowcatcher, on the engine "was there to throw things off," and that "anything between the rails would be thrown off" by it.

With these conditions existing, what followed? Having set a switch, in order merely to save himself the labor of walking some fifty to seventy-five feet to the cars, or of getting on the rear of the engine, or into the cab, as he had so far been accustomed to do during the day when the distance to go was considerable, he deliberately stepped between the rails and, as the engine approached him at an unknown rate of speed,— without invitation from any source, and while under no compulsion nor constrained by any sudden exigency, with ample opportunity to exercise his judgment, and without knowledge of the space between the slats or whether the iron band came up flush with the face of the lower one, or "taking any notice to discover what he might seize to save himself in case of a misstep,"— he voluntarily took the chance of stepping or jumping on to the pilot; in so doing, his right foot struck upon the second slat and slipped off; the pilot hit it; he was shoved or rolled along the track, and received the injury complained of. To hold, under these circumstances, that it could be reasonably and properly found by the jury that the plaintiff was exercising due and ordinary care at the time of his injury, because he "supposed the engine was a safe one," would be "upholding a refinement that would hardly be relied upon if the defendants were not a corporation, and regarding that as sufficient evidence to justify an action which would not be so regarded in a suit between two natural persons." *Hanley* v. *Railway*, 62 N. H. 274, 282.

Exceptions sustained. Verdict set aside.

*Judgment for the defendants.*

CLARK, C. J., did not sit: the others concurred.