HANS STOMNE v. THE HANFORD PRODUCE COMPANY, Appellant.

**Master and Servant:** ASSUMING RISK OF EMPLOYMENT: *Jury question.* An employer reversed an elevator cable, and informed his employee that the elevator was fit to use, but not to use it for the top floors, unless obliged to do so. While conveying freight to an upper floor, the elevator fell, injuring the employe. *Held,* that whether or not he assumed the risk incident to the defective cable was for the jury.

SAME. The essential element of the assumption of a risk by a servant of the danger from the defective cable of an elevator, that he appreciated the danger, cannot as a matter of law, be inferred from his knowledge of the defect where he was informed by the superintendent that it was safe enough to use for the rest of the season and the latter rode upon the elevator with the servant only the day before the accident.

SAME. The doctrine of the assumption of risk involves two elements; knowledge of the defect and appreciation of the danger.

**Settlement:** JURY QUESTION: *Pleading.* In an action for injuries, defendant pleaded a settlement, to which plaintiff made no reply. Defendant, at the close of the evidence, moved for judgment because such settlement was not denied by the pleadings. *Held,* that it was properly overruled because the settlement was denied by operation of law and plaintiff's testimony tended to show that it was not made in satisfaction of his right to sue; and hence that there was no settlement.

**SAME.** The issue of compromise and settlement of a servant's claim against his master for personal injuries is properly submitted to the jury upon conflicting evidence that the payments made to and retained by the servant were merely on account of wages and expenses attending his injury and were not intended as a settlement of the claim.

**Contributory Negligence:** JURY QUESTION. After a defective elevator cable was reversed, an employe was instructed not to use it for upper floors, unless obliged to do so. A stairway and another elevator afforded access to the upper floors, but it was customary for employes moving freight to ride on the elevator as it saved time. In conveying freight to an upper floor, the elevator fell, injuring an employe. *Held,* that the question of his negligence was for the jury.

**Evidence:** LIFE TABLES. Where there was evidence that a servant's injuries were permanent, life-expectancy tables were properly admitted.

**OPINION EVIDENCE:** *Competency.* A witness who is familiar with wire cables from working about and with them for many years and has repaired cables on elevators is competent to testify as an expert on the question as to the safety of a partly worn cable on an elevator, although he has never constructed an elevator.

**Plea and Proof.** Evidence that after a master's attention was called to a defect in an appliance he made certain changes and directed the servant to use it is admissible to avoid the inference of the assumption of risk from knowledge of such defect, although plaintiff filed no reply confessing the assumption of risk and avoiding the same, since the assuming of the risk pleaded in answer was denied by operation of law, without a reply.

**Damages:** EXCESSIVE VERDICT. Where plaintiff's spine was permanently injured and partial paralysis ensued in an accident caused by defendant's negligence, and he suffered excruciating pain, which would probably continue, a verdict of $8,000 was not excessive.

**Instructions:** REVIEWED TOGETHER. The omission of a material issue from a paragraph of a charge wherein the jury are instructed to find for the plaintiff, if they find in his favor on certain issues,

is not prejudicial, where such issue is fully covered in another part of the charge

**Practice:** OBJECTIONS    Where in action for injuries sustained by the falling of an elevator, a finding that defendant was negligent was not challenged, objection to testimony that witness considered the elevator unsafe, if human life was involved, going, as it does, to negligence only, is unavailable.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

SATURDAY, APRIL 8, 1899.

ACTION to recover for personal injuries caused, as alleged, by the negligence of the defendant. There was a jury trial. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed*

*Taylor & Burgess* for appellant.

*Wright, Call & Hubbard* for appellee.

WATERMAN, J.—I.   Defendant was engaged in the cold storage business at Sioux City, using therefor a building several stories in height. Plaintiff was in its employ as a common laborer. In the building were two elevators used for the purpose of carrying merchandise from floor to floor. The elevators were of equal lifting capacity, though one had a larger platform than the other. They stood quite close together, the larger one being nearer the door through which produce was received into the building. On one occasion, while plaintiff and a co-employe, one Sundloff, were engaged in oiling the wire cable that lifted the larger elevator, Sundloff noticed that the cable was defective in one place. As he says: "I saw one of them twists pretty nearly broken off, and two of them—— There is three twists on a cable, and two of them looked to me larger than the other, and as though they kind of give, and the wire around them was kind of broken off, like it had been chopped off with a hatchet." Sundloff called plaintiff's attention to the condition of the cable. Stomne looked at the defect, and then

the two went to the office, and reported what they had seen to Holcomb, who was the superintedent. The two men, in company with Holcomb, returned, and again looked at the cable. Holcomb told them he would report the matter, and a day or two after said to them that the cable would be changed end for end. This was done later. The cable was operated by being wound and unwound from a large drum at the top of the building; from this it passed over a pulley, and down to the elevator to which it was attached. Plaintiff says of the change made: "Before the cable was changed end for end, I think the worn place would come between the elevator and the pulley when the elevator was on the first floor. After the change, the worn place shifted to the other side." After this change, Holcomb said, in effect, to plaintiff, that he thought the elevator was all right until the spring work was over, but that he should not use it to the top floor unless obliged to do so. Shortly after this plaintiff and Sundloff were engaged in storing produce received. Both elevators were idle. They put a truck load of freight upon the large elevator, got upon it themselves, as was customary, and started for one of the upper floors. When near the second floor, the cable parted at the worn or defective place, and in the fall that resulted plaintiff was seriously and permanently injured. Some other facts necessary to an understanding of the points made will be stated in connection with the issues, as we consider them.

II. No question is made as to the finding of negligence on defendant's part. Appellant's first contention is that plaintiff, having knowledge of the defect in the cable, and thereafter using the elevator without complaint or objection, must be held to have assumed the risk in so doing. The doctrine of assumption of risk involves two elements,—knowledge of the defect and an appreciation of the danger. *Brownfield v. Railway Co.,* 107 Iowa, 254; *Mayes v. Railway Co.,* 63 Iowa, 562; *Worden v. Railway Co.,* 72 Iowa, 201; *Cook v. Railway Co.,* 34 Minn. 45 (24 N. W. Rep. 311); *Russell v. Railway Co.,* 32 Minn.

230 (20 N. W. Rep. 147). It is true that an employe is held to have knowledge of those things which the exercise of ordinary care should reveal, and that there may be conditions or defects so obviously dangerous that his knowledge of them will be held, as matter of law, to impress his mind with the risk arising therefrom. But is this such a case? If we should say that plaintiff knew, or should have known, that the cable was dangerously defective as it was used when he first saw the worn or broken strands, we must then take into consideration what followed. The employer, upon being notified, attempted to put the elevator in condition for use. Plaintiff was then told it was fit for service until the spring work was through; to use it to the lower floors, but not to the top floor, unless it was necessary. The elevator was used thereafter with the knowledge of the defendant, Holcomb riding upon it with plaintiff and Sundloff only the day before the accident. We cannot say, as a matter of law, under these circumstances, that plaintiff knew, or should have known, the risk in going upon this elevator. The most that can be consistently urged in defendant's behalf is that there was evidence to sustain a finding in its favor. But the jury found against it, and the fact is thus settled, so far as our consideration of the case is concerned.

III. It is thought the evidence shows that plaintiff was guilty of contributory negligence. What has just been said will apply on this point also. It was customary for the men moving freight from floor to floor in the warehouse to ride with it on the elevator. There was a stairway, also, that afforded access to the upper floors of the building, but the testimony seems to show that some one had to be on the elevator in order to properly manage it, and it is undisputed that the use of the stairway by the men would have resulted in a loss of time. If plaintiff is not held to the knowledge of danger in using this elevator, there is no warrant for saying he was negligent in not making use of the smaller elevator, which was accessible at that time, or in not

making his ascent on the stairway. As before, we say this was a jury question, and with the finding we cannot interfere.

IV. Next, we come to the issue of compromise and settlement. It is necessary to set out some further facts, in order that the claims of the parties on this branch of the case may be fully understood. Shortly after plaintiff's injury, Hanford, the president of defendant company, and Stough, its vice president, called upon him at his home. As to what transpired, these witnesses testify, in effect, that plaintiff and his wife said they had been advised to bring an action against defendant; that the physician told them Stomne would not be able to return to his work for some three or four months. Hanford made a proposition to settle by paying plaintiff's wages, ten dollars per week, until he was able to return to light work. At the wife's suggestion, Hanford included in this offer the payment for all medicines and the physician's bill. This offer was accepted, and plaintiff agreed to bring no action. Plaintiff testifies that he did not agree to accept the proposition as a settlement of his claim; that, while the offer was made on account of his injuries, yet he did not agree that he would not sue; that Hanford said: "When I should be well, if I should then want to go and bring suit against them, I should come to them first." To some extent plaintiff is corroborated by his wife. It is not disputed that, under this arrangement, defendant continued paying plaintiff his wages during a period of one year, amounting to the sum of five hundred and twenty dollars; that it paid for medicines and physician's services, four hundred and five dollars and twenty-five cents; and that plaintiff received and still keeps, the money so paid him. Defendant pleaded this settlement. Plaintiff filed no reply. At the close of plaintiff's case, and before any evidence had been received as to the settlement, defendant made a motion for a verdict, and, with other grounds stated: "Because the defendant, among

other defenses, pleads accord and satifaction and settlement, and the same stands undenied in the pleadings." When all the testimony was in, this motion was renewed, with an addition to the effect that the testimony shows an accord and satisfaction, and that, if plaintiff had any right, it is under the agreement as he states it, and not upon the original cause of action. It is now insisted that, inasmuch as plaintiff filed no pleading in avoidance of the settlement set up in the answer, defendant was entitled to a judgment. The plea of settlement was denied by operation of law. Plaintiff's testimony tended to show that the money was neither paid nor received in bar of his right to sue. Under these circumstances, it was open for the jury to find, as it must have done, that there was no settlement, and that the money paid was on account of compensation, but not in full for it. There is no legal reason that we can perceive why, if defendant admitted liability on account of plaintiff's injuries, it could not pay from time to time something on account, leaving the matter of adjusting its complete liability to a future date. There was evidence tending to show that this was what was done. If defendant had admitted the transaction as claimed, but denied that it was valid or effective as a settlement because of fraud or mistake, then a reply setting up such matter in avoidance would have been necessary. *O'Brien v. Railway Co.*, 89 Iowa, 644, and cases cited. But here the fact of settlement is in issue. If our views on this point need the support of authority, we refer to the case of *Higley v. Railway Co.*, 99 Iowa, 503, as somewhat in point. Another claim of appellant is that plaintiff's right of action, if any he has, is upon the agreement made at the time of this alleged settlement, and not upon the original cause. If anything more than what we have said is required to dispose of this claim, it need only be a statement that in plaintiff's version of what occurred on this occasion, while he uses the word "agreed," it is clear that he means no more than that he accepted the offer of payments on account.

V. One Barr was a witness for plaintiff. He was the person who repaired the elevator when the cable was shifted. Several objections are made by defendant to his testimony. He had been familiar with wire cables,—worked about and with them for many years. He had never constructed an elevator, though he had repaired cables on elevators. He was examined as an expert as to the cable in question. We think his qualification was sufficiently shown. The principal objection urged to his evidence is that he was permitted to say that he did not consider the cable, after it was reversed, safe, if human life was involved. It would be a complete answer to this objection, if there were no other, that the only effect of this testimony was to show negligence on defendant's part, and no question is made on that point in this court.

VI. Paragraph 10 of the court's charge is made the basis of the next exception. It is as follows: "You are further instructed that if you find from the evidence that, prior to the injury, the plaintiff was advised of a defect in the cable, and saw it, and this defect was called to the attention of the defendant, and the defendant assumed to change the cable and remedy the defect, and thereafter directed the plaintiff to continue the use of the elevator, and the plaintiff was induced to believe, by the acts and conduct of the defendant, that said elevator and cable were safe for use, and did so believe, and did not know, and by the exercise of ordinary care could not have known, that the defect in the cable rendered it weak and unsafe for use in the manner in which he was using it at the time of the injury, then he cannot be held to have assumed the risk consequent upon such defect." It is said that this instruction was not proper, because plaintiff filed no reply confessing the assumption of risk and avoiding the same. But plaintiff, by operation of law, denies that he assumed any risk. We have already said enough on this subject to show the status of the parties on this issue. It is further said by defendant

that there is no warrant in the evidence for the facts stated in this instruction.   But we think otherwise.

VII.    The fifth instruction affords the next ground of complaint.   The jury is told in this paragraph to return a verdict in plaintiff's favor if they find defendant's negligence, freedom from negligence on plaintiff's part, together with his injury, unless the settlement pleaded by defendant is established.   The fault found here is that the issue of assumption of risk is not submitted.   But, further on in the charge this issue is fully and fairly stated, and in such a way that we feel the jury could not have been misled.   See *Allen v. Railroad Co.,* 57 Iowa, 623.

VIII.    The ninth instruction given is also the subject of exception.   It is quite lengthy.   We will not set it out. Neither shall we go into detail in its consideration.   We have carefully considered the complaints lodged against it, and deem them without substantial merit.

IX.    It is thought there was error in admitting tables showing plaintiff's expectancy of life, and also in refusing an instruction asked by defendant relating to the subject of future disability.   Such tables are admissible when there is evidence that the injury is permanent, and we think the testimony here is without dispute on that point.   *Blair v. Madison County,* 81 Iowa, 313; *Ronn v. City of Des Moines,* 78 Iowa, 63; *Knapp v. Railway Co.,* 71 Iowa, 41; *Keyes v. City of Cedar Falls,* 107 Iowa, 509. As to the instruction, its subject-matter is fully covered in the charge as given.

X.    One or two rulings on the admission of testimony remain to be disposed of, and this we shall do by the statement that, if erroneous, they could not have been prejudicial.

XI.    Finally the amount of the verdict is made a subject of attack.   It was for the sum of eight thousand dollars, —a large sum, indeed, for one of plaintiff's age, business, and station in life, if compensation for his decreased earning

capacity alone was to be considered. But he has suffered excruciating pain. His injury is in part to the spine, resulting in partial paralysis. That he will never recover his former condition is testified to by two physicians who were witnesses. At the time of the trial, one year and a half after the accident, he was still suffering pain from his injuries, and no assurance was given by the physicians as to when this would cease. While the verdict is large, we cannot say it is excessive.—AFFIRMED.