LEWIS A. WIBLE v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

**Injury:** PROXIMATE CAUSE: *Assuming risk of employment.* A switch engine, sometimes used for long distance hauls, with a stub pilot in front and a tank and stub pilot behind, had iron handholds eighteen inches long attached to each end of the base of the pilot, leaving a space of three and one half feet over the main part of the pilot without a handhold. Plaintiff, in *stepping on the footboard* to make a coupling, stepped on the air hose lying on the footboard, and in putting out his hand to the draw bar, the handhold being behind him, he lost his balance, and fell, and his leg was cut off. He was induced to assume the risk by a promise to replace the short by a long handhold. *Held,* that whether the failure to provide a continuous handhold was the proximate cause was for the jury; and if plaintiff got the promise to repair because he apprehended danger he will not be held to have assumed the risk because he did not anticipate injury when he sought the repair.

*Appeal from Linn District Court.*—HON. WILLIAM G. THOMPSON, Judge.

THURSDAY, OCTOBER 26, 1899.

ACTION for damages. Judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*J. C. Leonard* and *S. K. Tracy* for appellant.

*Smith, Kirk & Smith* for appellee.

LADD, J.—The only question raised on this appeal is the sufficiency of the evidence to sustain the verdict. The

accident occurred at Ellsworth, Minn., a division station of the defendant, where its road branches to Sioux Falls, S. D., and to Watertown, of the same state. A round house with five stalls was located there, and a master mechanic had supervision of the repairs. An engine with what is called a "stub pilot" in front and a tank with the same kind of a pilot behind, was used for switching, and required the services of a day and a night crew, each composed of five men. The engine was also frequently used to haul cars to Sibley, Iowa, a distance of about sixteen miles, and to Luverne, Minn., fourteen miles away. Iron handholds about eighteen or twenty inches long, and standing out about three inches, were attached to each end of a timber eight feet long, forming the base of the pilot. This left a space of about three and one-half feet over the main part of the pilot without a handhold. The particular negligence charged is the failing to have a continuous hand-hold or bar entirely across the end of the tank. Just previous to the accident, the engine was backing with the rear of the tank towards cars to which the coupling was about to be made. The plaintiff, having stepped on the board, about five inches wide, at the foot of the pilot, in order to get in position to adjust the link and pin, moved his right foot between the left and the pilot, and, in so doing, struck or stepped on a part of the air hose lying on the footboard. In his own words: "The handhold being behind me, I had to put my hand on the drawbar to sustain myself, but I lost my balance. My foot slipping off, threw me off my balance. I saw that I was going to fall. My foot went down and struck the ground, and I grabbed the drawbar (it was just a square bumper). I went to sustain myself by catching the drawbar, but my hand slipped off, and my foot went down again, and I jumped up, and my foot struck the slats of the pilot, and I went down, and as the pilot went across the west rail of the main line it caught my knee between the bottom of the pilot and the top of the rail,

and ground my leg, and cut it off right in the knee. I was at the time going to catch the north end of the engine to the cars to be coupled onto, and it was, of course, at that end where the coupling was to be done that I got on. I was, at the time of the accident, standing near the end of the pilot, on the footboard, with my face fronting towards the cars I was going to couple onto, which threw the hand-hold on that side right behind me." The witnesses agree that he should have gotten on where he did in order to make the coupling, so that no attention need be given to the suggestion that it would have been safer to have done so elsewhere. It is insisted that stepping on the hose occa-sioned the accident. If so, then it may well have been because of the want of such a handhold as reasonable care required. Before the plaintiff reached the point where he must have been to adjust the link and pin, and have it ready to couple with the car, the small handhold was behind him, and he had nothing to which he might hold. Riding in front of a moving engine is seldom safe, though often necessary. To do so standing on this narrow footboard with attention diverted by the coupling to be made, and nothing by which to steady or hold the person, was extremely hazardous; and because of the peril of such a situation continuous hand-holds are customarily used on switch engines, and seem well designed for the protection of those engaged in such work. Had such a handhold been on the base of the pilot, the plaintiff could readily have retained his balance by holding to the bar by hand or arm, and, though striking or stepping on the hose, would have remained secure. Even though he slipped, the rod might well have been seized, and himself saved from injury. While it cannot be said to a certainty that the injury would have been avoided by the use of such an appliance, this was reasonably probable, and it was for the jury to say whether the accident was the proximate result of the failure to provide such a handhold as the dictates of common prudence required. It may be

presumed that one riding in that situation would use every safeguard accessible, and it is only reasonable to suppose that, had there been such a continuous handhold, the plaintiff would have protected himself by hanging to it.

It is contended that, because the plaintiff did not anticipate an injury, he cannot avail himself of the promise to repair, and *Holloran v. Foundry Co.*, 133 Mo. Sup. 470 (35 S. W. Rep. 263), is relied on. There the injured party did not consider himself in a dangerous position, and for this reason could not avail himself of such promise. Here the plaintiff appreciated the risk and danger, and was induced to brook it because of the recent agreement to replace the short by a long handhold. There is a wide difference between apprehending danger and anticipating an injury. The former is the very basis of a demand for repair. See *Stomne v. Produce Co.*, 108 Iowa, 137. In *Young v. Railroad Co.* * (N. H) * (41 Atl. Rep. 268), there was no complaint or promise of repair, and hence no assumption of the risk. Short handholds are customarily used on road engines, and also on suburban or transfer engines. But, when one of these is appropriated for yard switching, there seems no good reason for not equipping it with appliances suitable for that purpose. That such was the main use of the engine in controversy fully appears from the fact that two crews were employed to handle it in switching. Hauling cars to neighboring stations was only incidental, and safety in the appliances was quite as essential to the switchmen as though it had been kept continually in the yards. This did not relieve the defendant from the duty of furnishing it with such handhold as was reasonably required for its ordinary work, and especially so when this would not have interfered with its use in the transfer of cars. The defendant succeeded in showing that the only engine similarly employed on another road was provided with a continuous handhold, and we are of opinion that it was for the jury to say whether it should have so equipped this one. —AFFIRMED.

* NOTE.— Not officially reported.— REPORTER.