G. J. COLES, Appellee, v. THE UNION TERMINAL RAILWAY
COMPANY, Appellant.

**Railroads:** NEGLIGENCE: PRIMA FACIE CASE. Proof that an overhead
1  structure is placed so low as to endanger the safety of brakemen
   riding on top of cars in performance of their duties, makes a prima
   facie case of negligence on the part of the company.

**Assumption of risk.** The danger arising from a risk which is not
2  inherent in the servant's employment is not assumed by mere
   acceptance of the service; there must be a knowledge or circum-
   stances making it clear that a reasonably prudent man should have
   known and appreciated the danger.

**Assumption of risk:** EVIDENCE. The question of whether a brakeman
3  should have known of the insufficient height of an overhead cattle
   chute so as to be charged with the assumption of the risk, was,
   under the evidence, properly submitted to the jury.

**Contributory negligence.** The question of plaintiff's negligence was,
4  under the evidence, properly submitted to the jury.

**Estoppel:** EVIDENCE. A transaction which is relied upon as constitut-
5  ing a waiver or ratification must have direct relation to the principal
   subject-matter to work an estoppel, and must be pleaded as such.
   The record in this case fails to present matter of estoppel.

*Appeal from Woodbury District Court.*— HON. G. W.
WAKEFIELD, Judge.

WEDNESDAY, APRIL 6, 1904.

ACTION at law to recover damages for a personal in-
jury. At the time of the accident, plaintiff was a switch-
man employed in the yards of the defendant company at
Sioux City, and had been thus employed for about a week.
The switching crew, of which plaintiff formed a part, con-
sisted of a foreman, the enginemen, a head switchman, who
remained with the engine, and a fieldman, plaintiff filling
the latter position. The switch tracks of the defendant com—

pany extend to the plant of the Armour Packing Company on the outskirts of Sioux City, and two of such tracks, in close proximity to each other, run down between the slaughter-houses on one side, and sheds, a smoke-house, etc., on the other. At some previous time there had been constructed an inclined covered chute, leading first from the ground up to the sheds mentioned and thence across and over defendant's tracks connecting with the slaughter-house on the other side. The purpose of such chute was to drive live stock from the ground up the same and into the killing room situated in the upper story of the slaughter-house. At the point where the chute crosses the tracks, it is 15 feet 4 inches from the top of the track rails below to the bottom of the chute above. An ordinary box car will clear the chute in passing under by three feet four inches. In general, the circumstances of the accident in question were that plaintiff while on top of a box car, and in passing under the chute, was struck and knocked off the car to the ground receiving the injuries of which he complains. It is his contention that he did not know of the dangerous proximity of the chute to the top of a passing car, that he had received no warning in respect thereto, and that at the time the car on which he was riding passed under the chute he was so occupied with the duties of his position that the danger was not observed or made apparent to him in time to avoid the same. The defendant pleads a general denial, assumption of risk, contributory negligence, and, in addition thereto, a full compromise and settlement of plaintiff's cause of action. There was trial to a jury, and verdict and judgment in favor of plaintiff. Defendant appeals.— *Affirmed.*

*C. A. Dickson,* for appellant.

*C. A. Irwin* and *G. W. Argo,* for appellee.

BISHOP, J.— No question is made concerning the fact

of the accident, or as to the character and extent of the injuries sustained by plaintiff. So too, it is conceded, in

**1. NEGLIGENCE:** *prima facie* case. effect, that proof of the overhead structure placed so low over the tracks as to endanger the safety of brakemen or switchmen riding on top of cars in the performance of their duties was sufficient to make out, *prima facie,* a case of negligence on the part of the defendant company. And such is in accord with the rule of the cases. *Keist v. Railway,* 110 Iowa, 32; *Railway v. Johnson,* 116 Ill. 206 (4 N. E. Rep. 381); *Railway v. Wright,* 115 Ind. 378 (16 N. E. Rep. 145, 17 N. E. Rep. 584, 7 Am. St. Rep. 432). To secure a reversal of the judgment, defendant relies in the main upon the three general matters of contention outlined in its answer, and we may proceed at once to an examination of the record in respect of these in the order of the pleading.

I.   At the close of the evidence, defendant moved for a directed verdict, one of the grounds assigned being that the dangerous structure was so openly and obviously apparent

**2. ASSUMPTION OF RISK.** that plaintiff must have known of the existence thereof, or at least, that in the exercise of ordinary care he should have known of the same, and, inasmuch as he remained in his employment without complaint or protest, it must be said as a matter of law that he assumed the risk of accident and injury incident to the presence of the chute. The motion was overruled, and we think properly so. Undoubtedly it is the doctrine of the books that where one enters upon an employment involving inherent danger, and this he does having knowledge of such danger, or it being made to appear that the conditions were such that the danger was open and obvious in character, and therefore readily apparent in advance to an ordinary observer, and he continues in his employment without protest, generally speaking, he cannot be heard afterwards to complain of an injury arising proximately out of such dangerous condition. In such cases the employe is said to have

assumed the risk incident to his employment. But a modification of the rule thus stated is called for where, as in the instant case, the condition of danger does not, strictly speaking, inhere in the employment. We think it fair to say that the existence of the chute in question, standing in close proximity to the tracks, presented a danger not ordinarily incident to the work which plaintiff as a switchman was called upon to do, and it would be extending the rule too far to impute to him a knowledge thereof in advance, as well as of the dangers to be apprehended therefrom. The doctrine of assumption of risk cannot, therefore, be applied in all strictness; other rules of law must be taken into account, that the rights of the parties may be ascertained. Primarily, it was the duty of the railway company to furnish a safe place to work. This is elementary. Therefrom it follows that plaintiff had the right to assume in the beginning that in the course of his employment he would encounter no dangers save those generally incident thereto; if other dangers there were, he was entitled to notice or warning. It is true enough that structures of one kind or another are frequently built in close proximity to railroad tracks, especially station tracks. As to all such — and included therein are overhead structures — employes at work on or about trains have the right to assume in the first instance that they are sufficiently far removed from the tracks as that danger therefrom is not to be apprehended. If dangerous, notice to them is required. *Correll v. Railway,* 38 Iowa, 124; *Knapp v. Railway,* 65 Iowa, 91; *Kearns v. Railway,* 66 Iowa, 599; *Moore v. Railway,* 89 Iowa, 228; *Olson v. Hanford P. Co.,* 111 Iowa, 349; *Lanza v. Le Grande Co.,* 115 Iowa, 299. In cases presenting such conditions, it is only where an employe has been made aware of the danger, sufficiently in advance to enable him to protect himself therefrom, that application of the doctrine of assumption of risk can be made. Now, knowledge of the danger may come from a warning given, or by actual discovery thereof in time to

avoid an accident. And it is not essential to legal discovery that the proof shall make it clear that the employe did in fact come to a knowledge of the danger. If the means of knowledge were not interfered with or obstructed, and the danger was so open and obvious as to be patent to an ordinary observer, knowledge will be imputed. In other words, one cannot be heard to assert ignorance, where all the circumstances appearing make it clear that as a reasonably prudent person he ought to have had knowledge. In this connection it is to be borne in mind that assumption of risk, as that expression is applied to cases like the one we have before us, involves not alone knowledge of the existence of the defective condition, but, as well, there must be an appreciation of the danger. *Stomne v. Hanford P. Co.,* 108 Iowa, 137; *Wible v. Railway,* 109 Iowa, 560.

It is not contended that any warning had been given to plaintiff, or that in point of fact he knew of the existence of the chute, and its dangerous proximity to the track. 3. ASSUMPTION OF RISK: evidence. The contention of the defendant is that, in any view of the case, the danger was clearly apparent, and that plaintiff should have discovered and avoided the same. A question of fact is thus presented, and a brief reference to the evidence in the record will make it clear, as we think, that with respect thereto reasonable minds might reach different conclusions, and that the question was therefore a proper one for the jury. Plaintiff testifies that while he had been at work about the yards for several days — and this included the packing house tracks — still he had never before ridden upon a car passing under the chute, save once, and then he was sitting upon the drawbar, and with his face to the end of the car; that he did not even know of the existence of the chute. Now, it appears that on the occasion of the accident in question the engine had been backed in on the packing house track, and was there coupled to several cars standing between the houses. As the start was made to pull out, plaintiff, who was standing

upon the ground, observed that the brake upon the rear car was set. As required in the performance of his duty, he climbed to the top of the car and attempted to loosen the brake. He found it set so tightly that his immediate efforts were unsuccessful; he continued therein, however, as the cars moved down towards the chute, and finally succeeded in loosening the brake. As he turned to descend from the car, he was struck by the chute. Whether or not it was possible, taking into account the distance from the point where plaintiff mounted the car down to the chute, for a person to take an eye measurement of the height of the opening under the chute sufficiently accurate to make manifest the danger, was not made the subject of any direct evidence. Taking the situation as presented by the record, it must be apparent that a finding to the effect that the plaintiff assumed the risk of accident must of necessity be conditioned upon these conclusions to be drawn from the evidence: (1) That his association with the tracks and their surroundings was such as that, in the exercise of ordinary care, he should have known of the existence of the chute; (2) that ordinary observation of the conditions by which he was surrounded would have disclosed to him the danger to be apprehended from such chute. That it was the province of the jury to determine upon these matters, we entertain no doubt. The questions involved were therefore properly submitted for a verdict, and, as we think, under proper instructions. It may be added in this connection that the court also submitted to the jury several special interrogatories bearing upon the question thus at issue, and each thereof was answered favorably to the plaintiff.

II. The question of contributory negligence was also properly submitted to the jury. If plaintiff knew, or in the exercise of ordinary care should have known, that the chute **4. CONTRIBUTORY** was in dangerous proximity to the tracks, and **NEGLIGENCE.** notwithstanding this he rode on the car down to his accident without taking any precaution to avoid the

danger, then, of course, he was guilty of contributory negligence, and he ought not to recover. The conclusion to be arrived at depends wholly upon whether plaintiff knew, or should have known, of the presence of danger. The question is akin in many respects to that with which we have been confronted in making application of the doctrine of assumption of risk. Indeed, were it necessary to do so, it would not be easy to determine with preciseness the line which marks the distinction between the proper application of the one doctrine and the other. It is sufficient to say that the question of ordinary care, as related to the conduct of defendant leading up to his accident, was one of fact for the jury, and this was the holding of the trial court in refusing to instruct a verdict on the ground that the record failed to show a want of such care.

III. We now direct our attention to the matter of the settlement alleged and relied upon as a defense. The subject is brought into the case by an amendment to the answer, **5. ESTOPPEL: evidence.** wherein it is pleaded that since the commencement of this action a full compromise and settlement of plaintiff's cause of action had been effected; that in evidence thereof plaintiff had executed and delivered to defendant a written release, a copy of such being attached to the pleading. In the writing it is recited that, in consideration of the sum of two hundred and forty-two dollars and seventy cents paid by defendant, the plaintiff has and does acknowledge full satisfaction of any and all damages growing out of the accident in question, and does thereby release and discharge the defendant from all further liability. It is further alleged in the amendment that the settlement so made was fully carried out, and that plaintiff has never repaid or offered to repay the sum of money received by him as in the writing stated. To this pleading the plaintiff filed a reply, in which the execution of the writing alleged by defendant, and the receipt of the sum of money named therein, is admitted. It is then said that the

alleged settlement was brought about by fraud and through false and fraudulent representations, the circumstances and character thereof being set forth.   Upon the trial, and while upon its main case, the defendant introduced in evidence the written release.   Plaintiff, in rebuttal, then introduced evidence in support of the allegations of fraud and false representations as presented by his reply.   This was followed by evidence on behalf of defendant addressed to the fact issue of fraud; also evidence to the effect that, at the time the release was signed, it was agreed that defendant should pay plaintiff's hospital and doctor's bills — which it afterwards did pay — and should give plaintiff a job as janitor or watchman at forty dollars per month.   It was made to appear that defendant did furnish plaintiff transportation to Sioux City, and put him at work.   Evidence was then introduced in proof of the fact that after working two weeks, during which time he made discovery of all the matters of fraud connected with the settlement, plaintiff represented that he was too ill to work, went home, and did not again return to his position; that at the end of the month he presented himself to receive his wages, and there was then paid to him without explanation a full month's wages, which he accepted and receipted for without question, and which he still retains.   It is conceded that, of itself, the fact issue as made by the allegations of fraud in the reply was a proper one to be submitted to the jury.

The contention of defendant is that, plaintiff having accepted of employment from the defendant as agreed upon at the time of the settlement, and having received and retained wages in excess of the amount due for the service actually rendered by him, and this after he had discovered the fraud of which he complains, he must be held to have ratified the settlement as made; that thereby he waived his right to object to such settlement, and he is estopped from disputing the validity thereof.   This contention was presented to the court in the motion to direct a verdict, and

again in the form of requests for instructions to the jury. We are agreed that the contention thus made cannot be sustained, and that the trial court rightly overruled the motion to instruct and rejected the proffered requests for instructions. In the first place, it is not pleaded that an agreement for subsequent employment, such as defendant relies upon, had any part in the alleged settlement. True, it appears from the evidence that the subject was mentioned at the time of the settlement, and it is certain that plaintiff did present himself and was given employment. The terms thereof, however, were no different from those incident to the employment of agents and servants in general, and he was subject to discharge at the will of the company. Moreover, it is not pretended that plaintiff had discovered the frauds of which he now complains at the time he entered upon his employment, and certainly there is nothing in the fact that he made discovery of such fraud during the few days that his employment continued, or in the fact that he accepted payment for the services performed by him, upon which to predicate a claim of waiver of the fraud or ratification of the settlement alleged. It is cardinal doctrine that a transaction relied upon as constituting a waiver, or as amounting to a ratification, must have direct relation to the principal subject-matter; it must be intended to have the effect contended for, and thus to work as estoppel. Here the settlement pleaded and relied upon by defendant involved only the payment of a certain sum of money in consideration of the release of defendant from liability. The subsequent employment was wholly independent thereof and voluntary, and the payment to plaintiff amounted to nothing more than making compensation for the services rendered by him. That more was paid than had been earned did not operate to change the character of the transaction. The case is unlike that of *Peterson v. Railway,* 36 Minn. 399 (31 N. W. Rep. 515), and the other cases cited and relied on by counsel for appellant. In the Peterson case it ap-

peared that after a settlement had been fully agreed upon, but before payment, plaintiff discovered that a fraud had been practiced upon her in making the settlement. Notwithstanding her knowledge, she afterwards accepted of the amount agreed upon, and it was held that she thereby waived the fraud. The doctrine of the other cases cited is analogous to that of the Peterson Case, and we need not refer to them in detail. In saying this much, we have ignored the contention of counsel for appellee that there is no pleaded issue of an estoppel arising out of any matter of ratification or of waiver. Having reached the conclusion that the record before us presents no matter of estoppel, we need go no farther than to say that there is much force in the contention thus made by counsel. We have repeatedly held that the party relying upon an estoppel must plead the same. *Mayes v. Railway,* 63 Iowa, 562; *Glenn v. Jeffrey,* 75 Iowa, 20; *Golden v. Hardesty,* 93 Iowa, 625; *Spencer v. Papach,* 103 Iowa, 513. The affirmative matters pleaded in the reply in the instant case stood denied by operation of law, and defendant was authorized, without further pleading, to bring forward any evidence, defensive in character, within its reach. If affirmative matter by way of estoppel was to be relied upon, orderly proceeding would seem to dictate that such should have been brought within the issues by supplemental pleading on the part of defendant.

IV. Complaint is made that some of the instructions given involve error. We have read all thereof with care, and, while the wording is not in all respects beyond criticism, we discover nothing to justify a reversal. The misconduct on the part of counsel for plaintiff complained of was not prejudicial, in view of the rulings and instructions of the court.

We conclude that the judgment was warranted, and it is AFFIRMED.