Drew Collingwood, Appellee, v. The Illinois and Iowa Fuel Company, Appellant.

**Master and servant:** NEGLIGENCE : WARNING : EVIDENCE. It is not
1 only the duty of a master to warn a servant of a known danger not patent to ordinary observation, but also to instruct him how to avoid it, and failure of the master to make good an assurance of timely warning and instruction, after ordering a servant to proceed, whereby an injury results is negligence. Evidence held to show negligence.

**Negligence of fellow servant.** Generally speaking, a master is not
2 liable for injuries resulting from the negligence of a fellow servant, except in cases where the rule is changed by statute.

**Negligence:** VICE PRINCIPAL : EVIDENCE. Where the performance of a
3 duty enjoined upon the master is delegated to a servant, the servant becomes a vice principal for whose negligence the master is liable. Evidence held to constitute the boss driver in a coal mine a vice principal.

**Same.** The master is not liable for the negligent act of a vice principal while in the performance of the duties of a mere operative.
4 Evidence held to show that the vice principal was not acting as an operative.

**Negligence:** EVIDENCE. A question of negligence is for the jury unless
5 the evidence is such that but one conclusion can be drawn by reasonable minds. In the instant case the evidence presents a question of fact respecting plaintiff's contributory negligence.

*Appeal from Wapello District Court.*— HON. F. W. EICHEL-
BÉRGER, Judge.

WEDNESDAY, NOVEMBER 16, 1904.

ACTION to recover damages for a personal injury. The
facts, so far as material, will be found stated in the opinion.
From a verdict and judgment in favor of plaintiff, the de-
fendant appeals.— *Affirmed.*

*McElroy & McElroy* and *N. T. Guernsey,* for appel-
lant.

*Jaques & Jaques* and *Cornell & Morris,* for appellee.

BISHOP, J.— The first proposition on· which a reversal
is contended for is that actionable negligence on the part of
defendant was not made to appear. A determination of this
question requires that we go into the facts pre-
sented by the record. Many of the propo-
sitions are conceded; others are involved in dis-
pute. In our statement which follows we have given the
facts as the jury was warranted in finding them to be. At
the time of his accident, in May, 1902, appellee was a boy
nineteen years of age. During the last days of the preced-
ing month he made application to the superintendent of the
coal mines operated by defendant in Wapello county for em-
ployment, and was referred to Sam Jenkins, the " boss
driver," so-called. It seems that in the operation of the
mine the coal was hauled in cars, running on rails, from dif-
ferent parts of the mine, through the entries to the point of
hoisting. These cars were drawn by mules, each mule with
its train of cars being under the care of a driver. All the
drivers in the mine were under the charge and supervision
of said Jenkins, boss driver. Plaintiff was given employ-
ment by Jenkins as a driver, and until within four days of
his accident was engaged in driving in entries other than

1. NEGLIGENCE: warning; evidence.

the fifth north entry off the main east entry, that being the one in which his accident occurred. During such four days he was engaged in driving in side entries leading off from the said fifth north entry, but beyond the place of accident. In this connection it appears that in the morning and at quitting time of such days he passed in and out on foot with his mule, but without any cars, through the north fifth entry and over the place of accident. In the course of the north fifth entry there was an incline, or hill, beginning at a switch near the opening to one of the side entries, and extending downward towards the main east entry, the latter being the entry to which all cars were drawn on the way to the hoisting shaft; that the pitch of such incline or hill was such that it was dangerous to take a train of loaded cars down the same without "spragging," as it is called. Spragging is the insertion of a strong stick, called a " sprag," from between the spokes of one car wheel to and between the spokes of the opposite wheel, so that when the sprag comes in contact with the body of the car it acts as a brake by preventing any further revolutions of the wheels, and compelling the sliding thereof along the track rails. The necessity of spragging for the incline was well known to the officers of the defendant company, including Jenkins, but was not known to the plaintiff. There is some conflict as to what occurred immediately preceding the accident, but we gather the facts to be that plaintiff was directed by Jenkins to hitch his mule to four loaded cars, coupled together and standing on the switch referred to, and take the same down to the main east entry. As plaintiff hooked his mule to the cars, Jenkins said to him, " This is a dangerous run, and I will go with you and show you where to sprag."

Plaintiff testifies: " Just about the time we were starting, Jenkins pulled out his watch and looked at it, and said, ' Are you ready to go ? ' and I said, ' Just in a minute, as soon as I put this oil away ; ' and he said, ' Hurry up and get out of the way ; it is just about shooting time ; ' and when I

went to put my oil away I heard the shooting going on, and I put my oil away and started back." It seems that when " blast shooting " was done in the mine all oil kept by employés for their lamps was required to be buried to avoid danger from fire or explosion. Upon returning to his mule and cars — the distance being nominal — plaintiff observed a man standing near the cars, and at the place where Jenkins was standing when he left to put his oil away. Nothing was said between the parties, and, as he testifies, plaintiff did not through the darkness of the mine observe the person closely enough to be able to swear positively that it was Jenkins; he simply took it for granted that it was the boss driver waiting for him. As he got on the head car and started his mule, the person whom he supposed to be Jenkins got upon one of the cars in the rear and rode along with him. Before plaintiff realized the situation the cars entered upon the incline, and, not being spragged, they shot quickly down toward the bottom, plaintiff being thrown off and sustaining the injuries of which he complains. He does not know what became of the person riding on the rear car.

The charge of negligence is in failing to provide a safe place to work. It is not contended by counsel for appellee that the mere maintenance of the inclined track of itself constituted negligence. It is the argument that, in view of the danger to be apprehended from running loaded cars down such incline without spragging, the defendant was negligent, in that it failed to sufficiently acquaint plaintiff with the danger so that he might protect himself against the same. That it is the duty of the master to provide a safe place to work is a rule of universal application. Accordingly, if the service is attended by conditions dangerous to the uninitiated, and not open and patent to ordinary observation, the rule puts upon the master the duty to warn of the danger, and failing to do so, whereby an injury occurs, he may he held negligent. Illustrative of the rule are the following cases: *Eller v. Loomis,* 106 Iowa, 276; *Mosgrove v.*

*Coal Co.,* 110 Iowa, 169; *Wahlquist v. Coal Co.,* 116 Iowa, 720; *Beresford v. Coal Co.,* 124 Iowa, 34; *Coles v. Railway,* 124 Iowa, 48.

Inherent in the verdict in the instant case is the finding that the operation of cars down the incline was dangerous unless proper spragging was resorted to; also that plaintiff had no previous knowledge either of the existence of the incline, or of the danger to be apprehended from operating cars down the same. Clearly, then, we have a case where the master was in duty bound to advise of the danger, and instruct his servant how to avoid the same. It is not pretended that any information was imparted to plaintiff save such as came from Jenkins just before the start was made. Counsel for appellant insist that the duty incumbent on the master was fully performed when Jenkins told plaintiff, " This is a dangerous run, and I will go with you and show you where to sprag." We think otherwise. Undoubtedly the information was sufficient to advise plaintiff of the fact that in the course of the run there was at least one place where spragging was necessary. But plaintiff was not called upon to ascertain the location thereof for himself, or take any precautions in respect thereto. The statement by Jenkins was not intended to be a warning even, nor did it serve as such. On the contrary, the effect thereof was to advise plaintiff that he might proceed with the assurance that he would be warned whenever a point of danger was reached. Jenkins did not accompany plaintiff, and he was allowed to proceed and to enter upon the dangerous way without warning. To such a state of facts the authorities cited and relied upon by counsel for appellant cannot be made applicable. That it is the imperative duty of the master to instruct, as well as to warn, see the cases collected in 20 Am. & Eng. Enc. 97. Here, as we have seen, the jury was warranted in finding that plaintiff was ordered to proceed in ignorance of the place and the extent of the danger to be encountered, and with the assurance that he would receive

timely warning. The failure upon the part of the master to make good the assurance given, whatever the cause, would be negligence, such as that may be said to have been the proximate cause of the accident and injury.

II. What we have said foregoing has been upon the assumption that Jenkins occupied the position of a vice principal, and that his failure to warn and instruct was the failure of the master. Counsel for appellant, however, insist that Jenkins did not occupy such position; that, on the contrary, the jury was not warranted in finding from the evidence that he occupied any relation to plaintiff other than that of a fellow servant. If this contention is supported by the record, then it must be said, as we think, that the accident was not caused proximately by negligence on the part of the defendant, and, this being true, a recovery on the part of the plaintiff should be denied.

Clearly enough, if Jenkins was a fellow servant only, he owed no legal duty to plaintiff. The corollary follows that plaintiff had no right to enter upon a way, known by him to be dangerous at some point in its course, resting upon any assurances given him by a mere fellow servant. If he did thus proceed, he assumed all risk, and this whether Jenkins went with him or remained behind. Save in cases where the rule has been changed by statute — and the instant case is not of such — a master cannot be made liable, generally speaking, for injuries resulting from a failure on the part of a fellow servant to exercise due care. Conceding, therefore, that it was the duty of the defendant to warn plaintiff of the danger, and that it had not done so, still if plaintiff had learned from some other source that the way was dangerous, and he chose to proceed, relying upon himself to discover the danger, or relying upon assurances which had not been authorized by his master, and for which the master was not responsible, then it is plain that there can be no recovery. *Yeager v. Railway,* 93 Iowa, 1.

2. NEGLIGENCE OF FELLOW-SERV-ANT.

Did Jenkins occupy the relation of vice principal? This is to be determined, not solely by his title or rank, but by the character of the service in which he was employed.

*Fink v. Des Moines Ice Co.,* 84 Iowa, 321; *Newbury v. Getchel,* 100 Iowa, 441. It appears that the mine in question was under the general charge of a superintendent. Inferior to such superintendent there was a pit boss, and Jenkins, the boss driver. The latter had charge of all the drivers, directed them where to work, and gave all orders as to time and manner of doing their work. All drivers were hired by him, and he had the right to dicharge, at least for cause. There is testimony, however, on behalf of defendant that his right to hire was limited to men sent to him by the superintendent. In respect of the employment of plaintiff, it appears that application was first made to the superintendent; he replied that he did not know whether men were needed or not, and directed application to be made to Jenkins. Plaintiff sought out Jenkins, and was given employment. The rule which exempts a master from liability for the negligence of a co-servant is predicated upon the doctrine of assumption of risk. Accordingly, where one voluntarily engages in the service of another, he is held to foresee that an injury may come to him through the carelessness of others employed in the service, and it is the risk of injury thus likely to occur that he is held to assume.

3. NEGLIGENCE: vice principal; evidence.

Now, in a sense all who are engaged in the service of a common master are fellow servants. It must be manifest, however, that the co-servant rule cannot be given a general application. There are duties which the law enjoins upon the master which he must perform. He may delegate the performance thereof to a servant, but the responsibility arising out of a failure to properly perform must remain with him. So it is that a servant or agent to whom is delegated the performance of duties which the law enjoins upon the master is said to be a vice principal. His acts are the acts

of the master, and of necessity his negligence must be the negligence of the master. And it has never been held that a servant in entering upon his employment, assumes the risk of accident resulting from negligence on the part of the master. The distinction is therefore between acts of negligence on the part of a fellow servant, acting as such, on the one hand, and acts of negligence on the part of the master, on the other hand. And in respect of the latter it makes no difference whether the master acts in person, or by another to whom he has delegated authority. Hence it is that the character of the act must furnish the test. " If it is one pertaining to a duty the master owes to his servants, he is responsible to them for the manner of its performance. But if the act is one which pertains only to the duty of an operative, the employé performing it is a mere servant, and the master is not liable to a fellow servant for its improper performance." *Newbury v. Mfg. Co.,* 100 Iowa, 411. See, also, *Railway v. Triplett,* 54 Ark. 289 (16 S. W. Rep. 266, 11 L. R. A. 773); *Jackson v. Railway,* 43 W. Va. 380 (27 S. E. Rep. 278, 31 S. E. Rep. 258, 46 L. R. A. 337).

It is true enough that when a person clothed with authority to represent the master, and therefore a vice principal, places himself in the position and undertakes the duties of a mere operative, and while thus engaged is

4. SAME.

guilty of an act of negligence productive of an injury, the master is not liable. The reason therefor is clear. In such cases the employé does not act in respect of a duty enjoined upon the master, the performance of which is delegated to him. Whatever his rank or title, he acts as an operative only, and the liability of the master is no other or different from that which flows from the act of any other operative. Taking the facts to be as stated, and being governed by the rules of law above expressed, it is not difficult to reach the conclusion that Jenkins occupied the relation of a vice principal. In the control of the movement of coal in the mine,

and of the persons engaged therein, he represented the master.   Therefrom it is an easy step to the conclusion that with the power of control and direction there was delegated the duty, incumbent on the master, to warn and instruct in respect of dangers reasonably to be apprehended in connection with the service.   It does not appear that it was intended or expected that he should assist in the operation of the train of cars.   There could be no occasion or necessity therefor.   He was to do nothing more than to accompany plaintiff and point out to him the place of danger.   This was a duty which was owing to plaintiff from the master, and Jenkins proposed to do no more than the master was bound to do. Having the power of control, and standing, therefore, in the place of the master, he spoke as the master, and his failure of duty was the failure of the master.   We have examined the long list of cases cited by counsel, and we find nothing to disturb the conclusion as reached by us.

III.   Further, and as a last ground of contention, appellant insists that as a matter of law the facts shown make out a case of contributory negligence on the part of the plaintiff.   It appears that plaintiff knew what was meant by spragging a train of cars, and the purpose thereof, although he had never been called upon to perform the operation in the mine in question.   The argument is that, being thus far advised, it was negligence on his part to proceed with his train without making sure that Jenkins was with him.   As we have had occasion to say repeatedly in connection with other cases, negligence, as a rule, is a question of fact for the jury.   It becomes a question for the court only when reasonable minds must draw the same conclusion from the conceded state of facts.   Taking the facts in this case as we have stated them foregoing, and we think it not unreasonable to say that plaintiff, upon being directed to put away his bottle of oil — a duty which consumed but a few moments of time — and then to pull out, and passing, as he did in the darkness of the mine,

5. Negligence: evidence.

a man standing where Jenkins had stood, and apparently ready to accompany him, had the right to believe that he was not being allowed to proceed and encounter the danger alone; that with him was one who represented the master, and who would give him warning when required. If he had the right to so believe, he cannot be held guilty of negligence. The jury answered the question in the affirmative, and we do not feel called upon to disturb the finding.

Some other questions are made which we have examined, and find them to be without merit.

Our conclusion is that the judgment was right, and it is *affirmed.*