E. E. KINSEY, v. NORMAN MANUFACTURING COMPANY and others, Appellants.

**Explosive appliances:** DEFECTIVE GAS PLANT: EVIDENCE. In this action for injuries inflicted by the explosion of an acetylene gas tank, the evidence is held sufficient to warrant a finding that the gas plant was defective at the time it was purchased by plaintiff, in that the carbide cartridge would not fall easily into place when refilling the tank, owing to a small piece of solder attached to the seam of the inner side of the sheath of the cartridge.

**Same:** CONTRIBUTORY NEGLIGENCE. Although the carbide cartridge might have been placed in position by manipulation, notwithstanding the obstructing solder, the plaintiff was not guilty of contributory negligence as matter of law, under the circumstances shown, because failing to so manipulate the cartridge or remove it entirely before the explosion, but that question was for the jury; nor was plaintiff's wife who accompanied him to the plant in the basement for the purpose of assisting in refilling it guilty of negligence as matter of law, in trying to escape from the basement up a stairway through which she had entered it for the purpose of avoiding the danger from an explosion.

**Appeal:** REVIEW OF QUESTIONS NOT RAISED BELOW. Questions not raised in the trial court will not be reviewed on appeal. Thus in this case the question of defendant's contention that plaintiff was not entitled to recover for the wife's injury, because she was not a party to the contract for the purchase of the lighting plant can not be considered on this appeal, because not raised in the lower court.

**Expert evidence.** It was competent in this action for an expert in the manufacture and installing of gas plants to testify that if the solder was in the cartridge when made, and caused the shell to stick, it was not perfect manufacture, and that the solder found in the cartridge could not have gotten there during the explosion.

*Appeal from Polk District Court.*—Hon. W. H. McHenry,
Judge.

Thursday, April 4, 1912.

The facts are stated in the opinion.—*Affirmed.*

*Thos. A. Cheshire,* for appellant.

*Blake & Blake,* for appellee.

Sherwin, J.—The defendants were the manufacturers
of acetylene gas lighting plants, and sold one of said plants
to the plaintiff, and installed it in his residence. The plant
consisted of an outer galvanized circular tank, which tank
was filled with water to within four inches of the top.
Inside of this tank was another tank, without a bottom,
constructed of galvanized iron, which was called the "gas
bell," or "gasometer." In the center of this gasometer, at
the top, there was a circular opening extending downward,
which was called the "water leg," and around this water
leg was a space into which the water in the outer tank did
not come. This space was tight at the bottom, was filled
with water, and was called the "water seal;" its function
being to prevent gas that had formed from escaping around
the cartridge and at the top of the gas bell. The cartridge
was placed in this water leg. The cartridge was about
eight inches in diameter, and was placed in the water leg
by telescoping the outer sheath of the cartridge with the
wall of the water leg, the outer sheath of the cartridge
going into the space known as the water seal. About two
weeks after the plaintiff had commenced using this plant,
he and his wife went into the cellar after dark for the pur-
pose of recharging the cartridge with carbide; the wife
carrying a lighted lantern. The carbide was put in the cart-
ridge, and the plaintiff then attempted to put the cartridge

in place in the water leg. It caught so that it could not be pressed straight down, and while plaintiff was trying to press it into place gas formed, which became ignited, causing an explosion, and the damage to the plaintiff, his wife and his property.

The petition was in three counts. The first count was for a breach of warranty of the gas plant, and this we need not further consider, because it was eliminated from the case by the action of the court in reducing the amount of plaintiff's recovery. The second count was for damages to the plaintiff and his property, because of defendants' negligent construction of the cartridge. The third was for injuries which plaintiff's wife sustained; her claim therefor having been assigned to the plaintiff. The evidence shows without serious question that the cartridge would, and did, stick before it reached its proper place under certain conditions, and, further, that by turning and manipulation it could be lowered to its place. After the accident, a small piece of solder was found attached to the seam of the inner side of the sheath of the cartridge, and it was the claim of the plaintiff that this solder caught and prevented the lowering of the cartridge at the time of the accident, and hence caused the same. If the solder was there at the time in question, it was improperly there because it was essential to the safety of the plant that the cartridge, and, in fact, the entire machine, operate certainly and without obstruction.

The appellant with great positiveness asserts that there was no competent evidence tending to show that at the time of the sale, delivery and installation of the plant this solder was there. We are united in the view, however, that counsel's claim in this respect is not sustained by the record. As we have said, there is no question but what the cartridge did stick before the accident, and after the accident there is an abundant showing that it would then stick,

1. EXPLOSIVE APPLIANCES: defective gas plant: evidence.

under· certain conditions, in the same way that it had before, unless it was manipulated so as to avoid the catch of the solder. And while there was evidence tending to show that the piece of solder might have been solder that melted on the top of the cartridge, and dropped there and lodged during the fire, it was by no means conclusive, for the jury had the right to consider all of the circumstances,· and, when they were considered, a very serious question would immediately arise as to whether the solder was lodged there in the manner claimed by the defendant. We are of the opinion that the jury correctly found that it was there when the plant was delivered to the plaintiff.

It was shown by demonstration during the trial that the cartridge could be placed in position by manipulation, notwithstanding the obstruction, and it is claimed that the plaintiff was guilty of negligence as a matter of law in not resorting to such means at the time of the accident. We are not willing to assent to this proposition. This' was one of a class of machines that are generally known to be dangerous, unless rightly contsructed and rightly operated. It needs no expert to demonstrate that a combination of gas and fire may be dangerous, nor that rapidly forming gas must have an escape. It was a machine of such character as to demand full and explicit directions as to its operation, and these directions the defendant gave. Indeed, one of its present objections to the plaintiff's right to recover is based on the claim that he was negligent, because he did not closely and particularly follow such instructions. He had had no previous experience with such lighting plants, and knew nothing about them other than what he had been taught by defendants and himself learned in two weeks use of this one, and during this time it had been necessary to charge cartridges but once before the time in question. When plaintiff found that he was unable to get the cartridge in place, he was almost immediately aware that gas was rapidly forming in

2. Same: contributory negligence.

the cartridge, and was evidently afraid that something might happen, for he told his wife to seek a place of safety. But he was confronted with an emergency which called for instant action, and because he did not turn the cartridge, or take it out, is not sufficient ground for saying that he was negligent as a matter of law.

As we understand the record, the plaintiff had not before had occasion to place this particular cartridge. At any rate, it had not given him any trouble, nor did he know where the difficulty was. He was also advised by the defendants that he might safely use a light around the plant. The question of contributory negligence is generally to be submitted to the jury, and we think it was a jury question here. *Sidwell v. Coal Co.,* 154 Iowa, 475; *Burger v. Ry. Co.,* 139 Iowa, 645.

And in this connection we may properly notice the appellants' contention that the solder on the cartridge was not the proximate cause of the injury to plaintiff's wife; it being the claim that the proximate causes thereof were two: First, the negligence of the plaintiff in holding down the gas bell for a moment; and, second, her own negligence in trying to escape from the cellar up the stairway through which she had entered it. The contention as to the husband's negligence is disposed of by what we have already said relative thereto, and the question of the wife's negligence, for the same reasons, was for the jury.

Appellant also urges that no recovery should have been allowed the plaintiff on account of his wife's injury, because 3. Appeal: review of questions not raised below. she was not a party to the contract for the purchase of the lighting plant. This proposition would present a question of interest were it properly here for consideration. It is not in this case, however, for the reason that no question of the kind was raised, or presented, to the trial court. It can not, therefore, be considered here. *Reed v. City of Muscatine,* 104 Iowa, 183.

The plaintiff used as a witness one Winters, who was shown to be an expert as to these gas plants, he having installed the one in question while in the defendants' employ, and he was allowed to testify, over defend-

4. EXPERT EVI-
DENCE.

ants' general objection, that, if the solder was in the cartridge when it was made and caused the shell to stick, it was "not perfect manufacture." Other witnesses, who were fully shown to be expert workers in solder, testified that in their judgment the piece found in the cartridge could not have got there during the fire. All of this testimony was in our opinion competent. *Long v. Insurance Co.*, 113 Iowa, 259; *Stomne v. Produce Co.*, 108 Iowa, 137. The objection to the eleventh instruction is disposed of by what has already been said relative to recovery for the injuries to Mrs. Kinsey. We find no reason for reversing this case; and it is *affirmed*.