V. T. Malott, Receiver Terre Haute & Ind. R. R. Co. v. J. B. Hood.

1. NEGLIGENCE—*Failure of Railroads to Maintain Handholds as Required by the Interstate Commerce Act.*—A train operated by a railroad company engaged in the transportation of freight across an entire State, and for a considerable distance within another, is a through train, and is, with every car composing it, within the meaning of the Federal statute regulating interstate commerce, required to be furnished with handholds as required by such act, and the failure of the company to maintain such handholds is *prima facie* negligence.

2. MASTER AND SERVANT—*Liability of the Master When an Injury is the Result of His Negligence Combined with Some Ulterior Cause.*— The rule is well settled that where an injury to a servant is the result of the master's negligence, combined with some ulterior cause, and the injury is one which may properly fall within the class of assumed risks, the master is liable where his negligence was the efficient cause of the injury. It is not necessary to a recovery that the master's negligence should be the sole, proximate cause of the injury.

**Trespass on the Case,** for personal injuries. Error to the Circuit Court of Coles County; the Hon. FRANK K. DUNNE, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed December 10, 1901.

T. J. GOLDEN, attorney for plaintiff in error; NEAL & WILEY, of counsel.

JAMES W. and EDWARD C. CRAIG, attorneys for defendant in error.

MR. PRESIDING JUSTICE HARKER delivered the opinion of the court.

The defendant in error, while in the employ of the plaint-

iff in error as a freight train brakeman, had his hand mashed
in attempting to couple cars, and had it so injured that its
amputation became necessary.   In a suit for damages, he
recovered a judgment of $3,500 against the plaintiff in
error.

Two charges of negligence were made and relied upon as
grounds of liability: one was the use of cars in interstate
commerce not provided with grab-irons or handholds in the
ends and sides as required by the fourth section of the
interstate commerce act; the other was that the place pro-
vided by the plaintiff in error for the defendant in error
was not a reasonably safe one for coupling cars, in that the
side track where he attempted to make the coupling was
slanting and dangerous.

The first contention urged upon our consideration is that
the proof did not bring the case within the operation of
section four of the interstate commerce act, which makes
it "unlawful for any railroad company to use any car in
interstate commerce that is not provided with secure grab-
irons or handholds in the ends and sides of each car for
greater security to men in coupling and uncoupling cars."
The train on which Hood was working was a freight train
running between East St. Louis, Illinois, and Indianapolis,
Indiana.   The car which he testified caused the injury, and
that did not have the handholds, was put in the train at
East St. Louis, destined for Indianapolis.   There was no
evidence showing that it contained freight consigned from
one State to another, nor do we think, as is contended by
the plaintiff in error, that the duty rested upon the defend-
ant in error to specifically make such proofs.   The train
of which the car in question was a part was engaged in
interstate commerce, carrying stock and merchandise from
one State to another; and the car itself, was attached where
the train was made up, at East St. Louis, and billed through
to Indianapolis.   The construction which the plaintiff in
error seeks for the provision quoted is too narrow.   If
adopted, it would in many instances defeat the wholesome
purpose for which it was enacted.   The plaintiff in error
was engaged in interstate traffic, operating a railroad across

one entire State and for a considerable distance through another. As the train in question was a through train and was at the time engaged in transporting freight from one end of the road to the other, every through car was, within the meaning of the Federal statute, a car used in interstate commerce.

In opposition to the testimony of Hood that the car did not have handholds, was the testimony of two car inspectors to the effect that they inspected the entire train on its arrival at Terre Haute, a few hours after the accident, and that every car was equipped with those appliances. In the conflict, it was the peculiar province of the jury to say where the truth was. We are not prepared to say that they erred in finding as they did on that question.

There is no room for the contention that the defendant in error did not exercise proper care for his own safety at the time he was injured. It was in the night time, in the latter part of December. No other person was immediately present. From his testimony, it appears that while stooping over to make the coupling, one foot, by reason of the uneven condition of the ground, slipped, and as there was no grab-iron for him to hold to, he was pitched forward and had his hand mashed. He was using his lamp and appears to have been giving the ordinary attention required for such service.

We can not agree with counsel that the injury was an assumed risk incident to the employment and service in which Hood was engaged. We give full recognition to the well established rule of law by which railroad employes assume all hazards ordinarily incident to that kind of service, and readily acquiesce in the application of the rule to dangerous conditions arising from the formation of ice about switch tracks. As applied to the charge of negligence relating to the slanting and dangerous condition of the side track, where Hood attempted to make the coupling, there is some room for the contention made by counsel for the plaintiff in error; but as we look on it, the absence of the handholds from the car was the efficient cause of the injury. No doubt, the slippery condition of the ground contributed

to it.  The rule is well settled, however, that where the injury to the servant is the result of the master's negligence, combined with some ulterior cause, and one which may properly fall within the class of assumed risks, the master is liable if his negligence was the efficient cause of the injury.  It is not necessary to a recovery that the master's negligence be the sole, proximate cause of the injury.  Village of Carterville v. Cook, 129 Ill. 152; Pullman Palace Car Co. v. Laack, 143 Ill. 242; 2 Thompson on Negligence, 1085; Cooley on Torts, 684.

It is provided by the eighth section of the act of Congress which makes it mandatory on all railroads engaged in interstate commerce to provide cars with handholds, " that any employe of such common carrier who may be injured by any locomotive, car or train in use contrary to the provisions of this act, shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such common carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge."  In view of that provision, it mattered not whether Hood was ignorant of or had knowledge of the absence of the required appliances before he was injured.

Complaint is made of the fourth and seventh instructions given for the plaintiff.  The greatest objection that can be urged to them is that they are vague and uncertain.  The seventh one is the more objectionable of the two.  It reads :

" 7.  The court instructs the jury that an employe on a railroad does not assume all the risks incident to his employment, but only such risks as are ordinary, and remain so ordinary, usual and incident to his employment, after defendant has used ordinary care to remove them."

It is difficult to understand what is meant by the last clause.  It could not possibly aid the jury.  But as neither of these instructions relate to the charge of negligence about failing to supply cars with handholds, and as the defendant assumed no risk which covered such failure, and as we think that was the efficient cause of the injury, no harm resulted to the plaintiff in error by giving them.  Judgment affirmed.