## DUTCHER v. ROCKLAND ELECTRIC CO.

(Supreme Court, Appellate Division, Second Department.   January 24, 1908.)

ELECTRICITY—ACTION FOR INJURIES—EVIDENCE—SUFFICIENCY.

In an action for injuries to a telephone lineman, owing to his having brought his hand in contact with a live uninsulated wire belonging to a power company, evidence *held* sufficient to show plaintiff free from contributory negligence, and defendant negligent in failing to insulate the wire.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, § 11.]

Miller and Gaynor, JJ., dissenting.

Appeal from Trial Term, Rockland County.

Action by Ulysses Grant Dutcher against the Rockland Electric Company. Appeal by defendant from a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, MILLER, and GAYNOR, JJ.

M. B. Patterson, for appellant.

Frank Comesky, for respondent.

WOODWARD, J.   The action was for negligence and was brought against the New York Telephone Company and the Rockland Electric Company jointly; but the complaint, upon a motion made by the counsel for the codefendant, the New York Telephone Company, was dismissed as to that defendant and submitted to the jury as to this appellant. The only question here involved is whether or not the plaintiff was guilty of contributory negligence as a matter of law.

The defendant is engaged in the business of generating and transmitting electricity. Its power house is in the village of Hillburn, Rockland county, N. Y. The transmission of the current of electricity to various points in and around the town of Ramapo is through heavy insulated copper wires, some of which under a special arrangement with the New York Telephone Company were strung on the poles of that company about two feet below the telephone wires. On the 15th of January, 1906, the plaintiff, while in the employ of the New York Telephone Company as lineman and while in the act of passing the telephone wire over one of the electric wires belonging to the defendant, suffered a shock, through the contact of his hand with a naked section of the live wire, which made him unconscious, and caused him to fall to the ground, and to sustain the injuries for which he brings this action. After reading the evidence, I am of the opinion that the question of contributory negligence here is not one for the court. The case at bar is not to be governed by Lofsten v. Brooklyn Heights R. R. Co., 184 N. Y. 148, 76 N. E. 1035, where the plaintiff was so regardless of every precaution and so deficient in ordinary prudence that he was guilty of contributory negligence as a matter of law. There the plaintiff, who stepped in front of an approaching car, does not appear to have taken the slightest pains to ascertain whether he saw any danger in a place where danger was to

be presumed. Here the evidence shows that the plaintiff took the precaution to look if the wire was all right before ascending; that, thrown off his guard by the reply of his foreman that no gloves were needed, he took it for granted that the wires were dead; and that he used as much care as the other linemen working on the job. The facts therefore do not, as in the Lofsten Case, establish a controlling presumption of the plaintiff's contributory negligence. It seems that whether or not a wire be heavily charged is not discoverable by observation alone; and, while the plaintiff admits that he knew he was going to work among electric wires, he is not to be charged with contributory negligence if he can show that he used ordinary and reasonable care. It is claimed that he was deficient in precaution because of his failure to use rubber gloves. Ordinarily, it is true, such omission would be conclusive of negligence, but it appears that in the case before us the plaintiff was thrown off his guard by his foreman, who he testifies in reply to the question, "How about rubber gloves?" replied, "Go ahead; you don't need any." This testimony is corroborated, not only by the plaintiff's own witness, but also by two of the witnesses of the defendant, who admit that they heard no orders to use gloves such as the foreman claims to have given, and by the undisputed fact that not one of the four pole climbers put on gloves before the time of the accident.

In respect to the liability of the appellant for its negligence, which will be discussed later, there is, of course, no question of master and servant involved. But, in regard to the question of the contributory negligence of the respondent, his relation to his own employer and his conduct in following the directions and the suggestions of his foreman must govern our decision. The assumption of risk does not include such as may easily be prevented or obviated by the master. It can hardly be maintained that the plaintiff here had the same means of knowledge as his foreman. The fact that the foreman was asked if gloves were necessary shows that he was supposed to know more than his subordinates. The fact that only the week before he had given positive instructions that gloves should be used by the linemen at the village of Suffern because of the proximity of electric light wires seems to indicate, not only that he had superior knowledge, but also that the men depended on him to give them warning. If he did not know of the high tension of the wires at Hillburn and the consequent danger, it was his particular business to know. Moreover, if the foreman by word or act or by failing to bring home to his subordinates knowledge of a danger which is not obvious, the latter, if thrown off their guard, cannot be charged with contributory negligence. Fowler v. B. & O. R. Co., 18 W. Va. 579; Penn. R. R. Co. v. Ogier, 35 Pa. 60, 78 Am. Dec. 322; Morrissey v. Wiggins Ferry Co., 47 Mo. 521. It appears that the current could have been shut off while the men were working around heavily charged wires. The plaintiff testifies that, when he knew the wires were alive, he was accustomed to use gloves, and it seems that because the men had been told gloves were not necessary he naturally took it for granted that the wires were dead. The other linemen, it appears, also reached the same conclusion; for none of them used gloves, though all were

expected to do so when working around wires of high tension. The danger then was not an obvious one, and hardly admits of the analogy suggested:

"The man who heedlessly pulls the trigger of a loaded firearm takes it for granted that it isn't loaded; but no one would excuse his carelessness on the ground that he had been told that that was a prudent way to find out."

The fact that the question was asked would indicate ordinary and reasonable prudence. The plaintiff's experience covered but a few months. He had never worked among bare electric wires, and his action in not wearing gloves would seem to have been induced by the words of his foreman and by the actions of the others.

The defendant contends that the plaintiff should have been on his guard, since he admits that he observed that the insulation was in some places defective. The plaintiff, however, claims that as he took the precaution to observe the wire on the side of the pole where he was to work, and as "it looked all right" to him from the ground, he was not negligent. Nor do I see that negligence is to be imputed to him because he ascended the pole without looking up. Besides, to ascend the pole with eyes elevated would be a procedure of some difficulty and danger. It is true that, after the accident, the bare spot of some inches where the plaintiff was injured was seen from the ground, but the plaintiff's failure to see what was not specifically called to his attention is, in view of his precaution to look, not necessarily to be construed as negligence. It is true that the carelessness of his co-employés should not excuse the plaintiff; but the fact that all of the linemen failed to use gloves is surely significant. It shows that there was no appreciation of danger. On the other hand, had the plaintiff been a solitary exception, the fact that gloves were used by the others would be strong evidence of his negligence. But that they as well as the plaintiff were thrown off their guard by their superior tends to show that their conduct was such as would be true of the average prudent man under the same circumstances. More care than this the law does not require. I fail to see how the plaintiff was negligent in assuming that his foreman, who was invested with discretionary powers and clothed with authority, had superior knowledge. Though the master may require in his servant ordinary care and observation, yet as he is bound by the act of his foreman to the plaintiff in the case at bar no negligence attached if his conduct was controlled by the words of his superior. The plaintiff can only be found negligent if it be shown that the risk was fully understood by him. Burgess v. Davis Sulphur Ore Co., 165 Mass. 71, 42 N. E. 501. It is not enough to show that he had knowledge of the defect. It must also appear that he appreciated the danger; and the failure of all the pole climbers to use gloves tends to prove that the danger was not appreciated. Suppose all of them had been injured simultaneously? Suppose that, instead of 4, there had been 50 and that they had all been told gloves were not necessary, and that, relying upon such statement, all had been injured? Would that not be evidence that they had used ordinary and reasonable care? Could the defendant in such case escape his liability? That the others es-

caped injury was their good fortune. The plaintiff's position is exactly the same as theirs collectively. Furthermore, knowledge of a defect followed by an assurance of safety does not impose an assumption of risk. Stomne v. Hanford Produce Co., 108 Iowa, 137, 78 N. W. 841. The master is liable where his negligence was the efficient cause, though acting in conjunction with a cause for which he was not responsible. Malott v. Hood, 99 Ill. App. 360. The appellant claims that there was a rule that gloves should be used. Yet, if in "practice a rule is violated with the knowledge of the master or of those who represent him, it will be regarded as abrogated or modified." When, for example, at the time of his employment a person promised in writing to use a stick given him to uncouple cars, but was told it was a matter of mere form and that the use of such sticks had been generally disregarded, he was not precluded from recovering. Louisville & N. R. R. Co. v. Foley, 94 Ky. 220, 21 S. W. 866.

As to the negligence of the appellant, there can be no doubt. It was shown that the wires had been used for 10 years or more, and that the insulation had become so worn that in some places it hung down in shreds, leaving wires of high tension bare and unprotected. There was some testimony to the effect that insulation is not protection, but the inference of the jury that the accident would not have happened if the wires had been completely insulated is warranted by the evidence. To quote Mr. Justice Jenks in Paine v. Electric Illuminating, etc., Co., 64 App. Div. 479, 72 N. Y. Supp. 280:

"It was the duty of the defendant to use due care in the stringing of its electric wires of dangerous voltage across the streets of the city, regardful of the existence of other wires, of the possibility of contact therewith, of the generation of high tension from its wires, and mindful that such other wires from time to time might require the attention of linemen and other workmen in the matters of repair, readjustment, clearance, insulation, and restoration to their normal functions."

It is well established by the decisions that the defendant should have kept its wires in repair and in safe condition. That the wires were of high tension and exceedingly dangerous because of the defective insulation is nowhere disputed. The jury had the right to find the defendant negligent, and their verdict as to the freedom of the plaintiff from contributory negligence is warranted by the evidence.

I think that the judgment and order should be affirmed.

Judgment and order affirmed, with costs.

JENKS and HOOKER, JJ., concur.

MILLER, J. (dissenting). This case must be decided without reference to the rules applicable to the relation of master and servant. It may be assumed that the defendant was negligent for maintaining its electric wires in the condition disclosed by the evidence. I pass by the question whether it is shown that such negligence caused the plaintiff's injuries—i. e., whether it is as probable that the accident

would have happened, though the insulation had not been defective—for I think the plaintiff failed to show the exercise of due care on his own part.

The plaintiff was an experienced lineman, and knew the danger of high tension electric wires.  He testified:

"I became familiar in working among electric light wires.  I know an electric light wire when I see it."

He excuses his neglect to use the rubber gloves, which were at hand and if used would have prevented the accident, by the remark of the foreman, who is said to have told the men, when the electric wires were reached, to go ahead, that they did not need rubber gloves. But the foreman had no knowledge or means of knowledge superior to the plaintiff's.  Both understood the danger, and knew that gloves were provided to guard against it.  Neither knew whether the current was on.  For a week preceding the accident the men with whom the plaintiff was employed had been running two telephone wires from the New Jersey state line to Hillburn, Orange county.  They frequently encountered electric wires, and, although it is now assumed that the plaintiff may have supposed that the electric current would be turned off while work was being done among such wires, he does not say so, and the only evidence on the subject tends to show that that had not been done in a single instance.  The appellant's manager did testify that on one occasion he received a request from the telephone company to shut off the current, but that testimony referred to different work, a different line, and another time.  In place of notifying the electric company to turn off the current whenever electric wires were reached, an altogether impractical thing to do, rubber gloves were provided for use at such times, and that fact was notice, if, indeed, any was needed, that the men must use the gloves, and not rely on the current being turned off.  Near Hillburn appellant's wires were strung on the telephone company's poles for a space of about 15 poles.  It is not pretended that the appellant was notified of the work being done by the telephone company, much less of the time when the men would reach those poles.  The plaintiff had no reason to think, and does not pretend that he did think, that such notice had been given.  He admits that he thought "perhaps there was a day current," but he says:

"I received no warning, and no one wore rubber gloves; and I took it for granted they were dead wires."

The man who heedlessly pulls the trigger of a loaded firearm takes it for granted that it is not loaded, but no one would excuse his carelessness on the ground that he had been told that that was a prudent way to find out.  The plaintiff does not assert, and we should not assume, that he was ignorant of the high tension of wires, which were obviously a part of a primary circuit.  Although the judgment is about to be sustained on the theory that the plaintiff had a right to rely on the superior knowledge of the foreman, no one has pointed out in what respect that knowledge was superior.  In their work through the country the men came to this short section where the telephone

and electric wires were on the same poles. All knew that it was·
dangerous to work without rubber gloves among the electric wires,
if the current was on. No one knew whether the current was on,
but all knew that no attempt was made to find out. And the state-
ment of the foreman referred to supra, if it was made, amounted to
no more than an assurance that it was all right to take chances. If
it had been customary for the electric company to shut off the cur-
rent on notice, indeed, had there been a single instance of such a notice
during the performance of the work in which the plaintiff was en-
gaged, it might be said that the foreman would be supposed to know
whether such notice had been given in the particular case, and the
plaintiff would have had the right to infer from said statement that
it had been given. But the plaintiff does not testify that he supposed
any such thing, and his counsel does not argue that his testimony
warrants that inference. On the contrary, he argues that the plain-
tiff used the word "dead" in the sense of "abandoned," "disused," and
that he had a right to infer that the wires had been abandoned from
the fact that the insulation was so worn. On the day of the accident
the men had not needed the rubber gloves until the short section of
electric wires was reached. Then, instead of taking the trouble to
get the gloves from the tool box in the wagon, they took the chance
of safely doing the work without them. The plaintiff testifies:

"When I came to the cross-road where the electric wires came in upon the
same poles that the telephone wires were on, I and my associates went right
on just the same."

If the plaintiff had not allowed his hand to come in contact with
the wire, or if his body had not been grounded, or if there had been
no current on the wire, that might have been done without accident;
but I do not think his imprudence can be excused by the fact that he
was told to do what he knew was imprudent. If the absence of the
insulation was the cause of the accident, the plaintiff was careless for
allowing his hand to come in contact with the wire at that point. He
says that, before climbing the pole, he noticed that the insulation was
hanging in shreds from one of the wires, and that he "took a look
at the wire" on which he was hurt, and that "it looked all right."
But it is obvious that, though warned by what he saw on the other
wire, his inspection was only casual, for he admits that he did not
look up at all as he ascended the pole, and the testimony of his wit-
nesses is to the effect that at the point where he received the shock
the wire was bare for a space of two or three inches, a fact plainly
observable from the ground. But he did not rely on the insulation.
He understood what appears to have been undisputed on the trial
(it is sworn to by one of his own witnesses), that insulation on a wire
carrying a current of high voltage affords little, if any, protection if
the body coming in contact with it is grounded. Without any reason
for doing so, the plaintiff took it for granted that the wires were not
in use or that the current was not on; and I do not think a jury
should be permitted to say that a person of ordinary caution would
be so imprudent. It is urged that the plaintiff was not negligent for
doing as the other men did; in other words, that he should be ex-

cused for being careless because his associates were careless too.   His act is to be judged, not by what he saw others do, but by what ordinary prudence required him to do under the circumstances.   It is within common observation that men become heedless of perils which they are accustomed to encounter, and frequently omit the simplest precautions.   If there be any warrant in the evidence for the inferences upon which the judgment is about to be sustained, many of them have not been suggested by counsel, and, after a careful study of the record, I do not find what appears to me to be even a scintilla of evidence in support of some, then I think such inferences are opposed to the clear preponderance of the evidence, and that the judgment should be reversed as against the weight of evidence.   However, I vote to reverse on the ground that the motion to dismiss should have been granted.

GAYNOR, J., concurs.