The plaintiff, an employee, was injured on a platform of the defendant, on 22 April, 1909, while at his work. He alleges in his complaint: *Page 202 
"5. That for about four months prior to said 22 April, 1909, there had been a hole in the floor of said platform about 10 inches wide and 4 feet long and located in the passway between said tracks running to kilns Nos. 2 and 3, which said hole was caused by the breaking of a plank which formed a part of the floor of said platform.
"7. That on or about 22 April, 1909, it became necessary for the plaintiff, while in the performance of his duty, to pass along said passway between the tracks leading to kilns Nos. 2 and 3, with an empty truck on his shoulder, and when he got near the hole in said passway he stumbled and fell through said hole in said passway with said empty truck, weighing about 100 pounds or more, on his shoulder, a distance of several feet and landing on a brace or rafter or stob of some kind, which was under said platform, and struck plaintiff in the groins and the small of plaintiff's back fell across an empty truck which was lying on top of said platform, and the truck on plaintiff's shoulder fell over and hit him in the stomach or bowels, by which plaintiff was so badly and (257) permanently injured that he was confined to his bed for about three weeks and confined to his house for about four weeks, was unconscious for several hours, suffered great and excruciating pain and mental anguish, has been spitting up blood off and on ever since said injury and has been compelled to use crutches off and on ever since said injury, and is still crippled, and, as he is informed and believes, permanently injured.
"8. That plaintiff's said injury was caused by the negligence of the defendant company, which said negligence consisted (1) in their failure to repair the hole in said passway after having been notified and requested by the plaintiff and other employees of said company to do so, and (2) in said company's allowing its said passway and platform to become and remain in an unsafe and dangerous condition when the plaintiff and other employees of said company had to pass and repass in the performance of their duties."
The defendant answered said paragraphs as follows:
"5. In answer to section 5, it is admitted that some time prior to 22 April, 1909, there had been a hole in the floor of said platform, but it is denied that it was of the dimensions alleged in the complaint. And further answering said section, this defendant says that the location of said hole was perfectly apparent to the plaintiff, and prior to the alleged accident the same had been covered and closed by another board reasonably sound and strong, and the same was so covered at the time of the alleged accident.
"7. Section 7 is not true, and the same is denied as therein alleged, except that it is admitted that the plaintiff, in the performance of his duty, had to pass along said passway with an empty truck on his shoulder. *Page 203 
"8. Section 8 of the complaint is not true, and the same is denied."
The plaintiff testified: "I am plaintiff. On and before 22 April, 1909, was working for Weldon Lumber Company. Began to work for them September, 1908. There was a hole between Nos. 2 and 3 kilns in walkway. At time I got hurt No. 2 was filled; No. 1 filled. No. __ was blocked, and they were pulling lumber out on opposite side. (258) I was to put more lumber in kiln. The smoke in all the kilns had got in and hid the hole. I was walking with right hand on kiln No. 1. I was feeling to try to keep from falling in the hole. I knew it was there, but could not see it. The smoke from the kilns was such that I could not see. Shed was covered over. When you pull a kiln, you open door, and had to open all the kilns to fill No. 3. At No. 3, it being pulled, I could not see it. When I started in I could see the hole from the outside, and thought I could see the hole, but when I got in I couldn't. The hole was there in September; was my duty to walk along passway that way. I would go by hole some fifteen or twenty times a day, and three others besides myself. I had to carry boards from green end. It was my duty to take truck where dry lumber was unloaded and carry it back to the kiln. Mr. Pilley hired me to work. I told Mr. Pilley about the hole twice. I know Mr. Pilley passed along the hole sometimes two or three times a day. I told him about the hole the second week I worked. Mr. Shepard was going by there. I told him that the hole needed to be fixed. Mr. Shepard is president of the company. He said to tell Mr. Pilley about the holes. I told him that Mr. Shepard told me to go to Mr. Pilley to have the holes fixed. I told Mr. Pilley what Mr. Shepard said. He bowed his head to me. I went back to work. . . . It was about three weeks from that time I fell in the hole and was hurt. End of truck hit me in the stomach. I had truck on left shoulder feeling my way down to No. 3 by side of another truck. By kilns being just pulled, smoke had not got out. I could not see the hole, and slipped in it. . . . Hole large enough to fall in; about as wide as step (pointing to step of judge's platform) which is about 12 inches wide; was about 5 feet long. Truck on my shoulder weighed about 100 pounds. It was my business to carry truck on my shoulder. . . . This hole was between Nos. 2 and 3. It was in daytime. Passageway was as wide as step of judge's stand from witness's platform, which is about three feet. If I said in my complaint about 10 inches wide and 4 feet long, I don't remember. I told Mr. Pilley about mending hole in September; spoke of hole once or twice. What kept me from mending hole (259) was that I was hired to move lumber. I had no saw or hammer. They had a carpenter. If I had laid a plank they could not have moved the trucks. I never broke through before. I don't remember stumbling. I stated in complaint that I stumbled and fell in the hole; stepped on *Page 204 
a stick at the edge of hole. It was that that caused me to fall in the hole. I could not see the stick or the hole. I reckon I would have stepped in the hole, as I could not see. It was steam from kiln that so filled the passageway. It takes some fifteen minutes for steam to shift and pass away when kilns are shut up. If I had waited till steam had cleared away I could have seen the hole. The men who carry trucks carry sticks. I might or I might not have put the stick in there; both of my legs in hole. I don't know how I got in the hole, but I got both legs in hole. The truck I fell on was on the platform. . . . I had frequently walked by when the hole was hid by steam without getting in it; have walked by there since I went there in September. . . . If I would have stood doing nothing, waiting for steam to clear, I would have been discharged. It was my duty to put truck in as soon as possible. I opened the doors. It was my duty."
The evidence as to the extent of the injuries is omitted, as there is no exception bearing on the issue of damages. The defendant introduced evidence tending to show that, at the time of the injury, the platform or passway was in good condition; that there had been a hole in it, but it had been repaired before the plaintiff was injured; that the board of the passway was broken by the plaintiff throwing down the end of the truck which he carried on his shoulder. The board was shown to the jury, and a witness for defendant testified: "There were thicker boards at the mill. Board is not strong enough to hold the weight."
The defendant relies principally on a motion to nonsuit the plaintiff, but also contends that his Honor did not instruct the jury as to the assumption of risk, which is relied on as a defense, and that he erroneously submitted to them the question of the liability of the defendant, because of failure to properly repair the passway, insisting that the only negligence alleged in the complaint is that alleged in paragraph 7.
The doctrine of assumption of risk does not arise, as the defendant did not tender an issue or ask for an instruction thereon. We do not think, however, that the defendant has suffered any injury by its failure to do so, as it received full benefit of the facts relied on under the issue of contributory negligence.
The defendant's construction of the complaint would be correct if the plaintiff was confined to the facts alleged in paragraph 7, but the plaintiff goes further and alleges, in paragraph 8, that the defendant allowed its passway and platform to become and remain in an unsafe and *Page 205 
dangerous condition where the plaintiff and other employees had to pass and repass in the performance of their duties. This plea is defective, and the defendant had the right to require the plaintiff to state wherein the passway and platform had become unsafe and dangerous, but it is a defective statement of a cause of action which is aided by answer. Whitley v. R. R.,119 N.C. 727; Bennett v. Tel. Co., 128 N.C. 103.
Justice Walker says in Hitch v. Comrs., 132 N.C. 575: "It is well settled that in a case where the pleading is not framed with technical accuracy, or something is lacking to constitute a good statement of a cause of action, the defect is waived by pleadings to the merits or by not taking advantage of the defect in some proper way, and the defective pleading is aided and the necessary averments will be supplied by the law." There is no injustice in the application of this rule in this case, as the record discloses that both parties had full opportunity to present evidence as to the condition of the walkway. The counsel for defendant doubtless failed to point out the defect in the Superior Court because they knew it would be cured by amendment.
If the hole in the passway had been repaired by placing boards (261) over it, and the plaintiff stumbled and broke a board, the fact that the board broke and the evidence of the defendant's witness that there were thicker boards at the mill and that the broken board was not strong enough to hold the weight, was some evidence that the passway was unsafe after the repairs were made.
This brings us to the consideration of the motion to nonsuit, which is on two grounds:
1. That if the defendant was negligent, the act of the plaintiff in stumbling and falling was the proximate cause of the injury, and not the negligence of the defendant.
It is well settled, as contended by counsel for defendant, that a plaintiff cannot maintain an action by showing that the defendant is negligent, and that he must go further, and show that this negligence was the proximate cause of his injury; but by proximate cause is not necessarily meant the cause nearest the injury. It may be true that the plaintiff would not have been injured if he had not stumbled, and equally true that, although he stumbled, he would not have been injured if the passway had not been unsafe. Proximate cause means the dominant efficient cause, the cause without which the injury would not have occurred; and if the negligence of the defendant continues up to the time of the injury, and the injury would not have occurred but for such negligence, it is not made remote because some act, not within the control of the defendant, and not amounting to contributory negligence on the part of the plaintiff, concurs in causing the injury. The rule is thus stated in 26 Cyc., 1092: "Where the master's negligence is the efficient cause of *Page 206 
the injury, he is liable, although his negligence is combined with some ulterior cause." Malott v. Hood, 99 Ill. App. 360; R. R. v.Green, 70 Tex. 257; R. R. v. McLane, 24 Tex. Civ. App. 321.
In Etna Ins. Co. v. Boon, 95 U.S. 117, Justice Strong says: "The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in time and place. The inquiry must always be whether there was (262) any intermediate cause disconnected from the primary fault
and self-operating, which produced the injury."
In Harton v. Telephone Co., 141 N.C. 455, the question is fully discussed, and Justice Hoke, speaking for the Court, quotes with approval the following statement of the law: "To show that other causes concurred in producing or contributing to the result complained of is no defense to an action of negligence. There is, indeed, no rule better settled in this present connection than that the defendant's negligence, in order to render him liable, need not be the sole cause of the plaintiff's injuries. When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, he is liable."
It is true that two justices dissented, but the difference of opinion was not as to the doctrine, but to the application of it in that case.
It follows, therefore, that the act of stumbling and falling into the hole alone will not prevent a recovery.
If, however, the plaintiff was negligent, and this negligence caused him to stumble and fall, he could not recover, although the defendant was also negligent, because this would present a case of concurrent negligence, and it is well settled that when the plaintiff and defendant are negligent, and the negligence of both concur and continue to the time of the injury, the negligence of the defendant is not in the legal sense proximate. The defendant says that this condition is presented by the evidence of the plaintiff, and upon this bases its second ground for judgment of nonsuit.
Is the plaintiff guilty of contributory negligence on his own evidence? If two minds could reasonably draw different conclusions from his evidence, one of which would be favorable to the plaintiff, the judge could not so declare, but must leave the matter to the determination of the jury. GrandTrunk R. R. v. Ives, 144 U.S. 408; Norton v. R. R., 122 N.C. 929.
In Russell v. Monroe, 116 N.C. 729, the Court says: "It will be found that the question whether a plaintiff has contributed by his own carelessness to bring about an injury complained of, must be (263) answered after a comprehensive consideration of the conditions confronting him at the time."
Accepting the evidence of the plaintiff to be true, for the purposes of *Page 207 
this motion, he knew of the defect in the passway, and under the conditions surrounding him ought to have known it was dangerous to go along that way; he had informed the defendant of the defect and the defendant had promised to remedy it; he was carrying an unloaded truck on his shoulder, weight 115 pounds; the defect could not be seen by him on account of the smoke from the kilns; he stumbled and fell; he was in the performance of his duty and was walking with his right hand on kiln No. 1 and was feeling to keep from falling; it would have taken fifteen minutes for the smoke to clear, and if he had stood doing nothing, waiting for the smoke to clear, he would have been discharged. We think under these circumstances it was for the jury to say whether he acted as a man of ordinary prudence, and this his Honor submitted to them.
"It is not contributory negligence for a servant to undertake dangerous work, where it is required by the nature of his employment, unless the danger is so obvious and imminent that no ordinarily prudent person would consent to undertake it." 26 Cyc., 1256.
It is the duty of the employee to observe, and he is chargeable with those conditions he could discover by the exercise of ordinary care; but he is not guilty of contributory negligence because he works in the presence of a danger, unless it is so obvious that a man of ordinary prudence would have refused to do so. Midgette v. Mfg. Co., 150 N.C. 347; Bissell v.Lumber Co., 152 N.C. 124.
In 29 Cyc., 140, a great many authorities are collected in support of the proposition that, "The fact that the person injured was aware of the danger is not sufficient to render him guilty of contributory negligence, as matter of law, but the question should be submitted to the jury."
Beard v. R. R., 143 N.C. 142, is very much like the one under consideration, except we think the evidence of contributory negligence was stronger in that case than in this. The plaintiff Beard was a freight conductor, and on the night he was injured, which was dark and stormy, he was ordered to take out a freight train. He went to (264) the freight office for his waybills, and as he came out and reached the platform, the wind blew out his lantern. There were no lights on the platform, and from the platform to the railroad track there were steps, which were cut into the platform about three feet and had no railing around them. He knew the steps were there and did not return to the office to light the lantern, but continued along the platform, feeling his way with his feet, and fell down the steps and was injured. It was held that he was not guilty of contributory negligence on his own evidence, and Justice Connor, speaking for the Court, says:
"The principles of law governing the case are well settled. If it can *Page 208 
be said that the plaintiff's duty to return to the office and light his lantern was so manifest and his failure to do so clearly negligent, so that two reasonable minds could come to but one conclusion in regard thereto, the authorities sustain defendant's contention. On the other hand, if measured by the standard of conduct which would control the reasonably prudent man, under similar circumstances, his conduct is capable of more than one reasonable inference, the decision of the question was properly left to the jury. Plaintiff was not injured by reason of falling into a hole, the existence of which was unknown to him. There was no negligence in the position or construction of the steps, but it was the duty of defendant to have and maintain sufficient light along the platform and near the steps or to have a railing so that their employees could use them with reasonable safety. This was a positive duty, the failure to perform which makes the defendant liable, unless the danger in using them was so manifest and obvious that no prudent man would do so in the absence of lights. In passing upon this question his Honor was compelled to take into consideration the whole evidence and fix the standard of duty, applying the legal test of prudence. It can not, we think, be said that, using his senses, members, and knowledge of surrounding conditions, as described by plaintiff, he was manifestly regardless of his safety. Common observation teaches us that many persons clearly within the pale of ordinary prudence, feel their way along steps in the dark. We (265) can hardly think that by doing so they can be said to be clearly and obviously negligent."
We have examined the exceptions to the charge of his Honor and to the refusal to give certain instructions requested by the defendant, and find no error. The prayers of the defendant were directed almost entirely to the questions of proximate cause and contributory negligence, which have been considered.
There is one exception to evidence. The plaintiff testified that he went to Mr. Pilley, a foreman of the defendant, and told him about the hole, and that Mr. Shepard, president of the defendant, said to have it fixed, and that Mr. Pilley bowed his head. He was then asked: "What effect did Mr. Pilley's nodding his head, when you told him, have on you?" To which defendant excepted. He replied: "It made me think he was going to have it fixed."
We think it was competent for the plaintiff to state what the foreman did and the impression made on him, as the defendant was contending that he was guilty of contributory negligence in continuing at work in the presence of a known danger; and bowing the head under the circumstances detailed by the witness reasonably indicated assent.
Upon consideration of the whole case, we find
No error. *Page 209 
 Cited: Bryan v. Lumber Co., post, 490; Hamilton v. Lumber Co.,156 N.C. 523; S. c., 160 N.C. 51; Ward v. R. R.,161 N.C. 184; Sasser v. Lumber Co., 165 N.C. 243; Carter v.R. R., ibid., 255; Holton v. Moore, ibid., 551; McAtee v. Mfg. Co.,166 N.C. 457; Buchanan v. Lumber Co., 168 N.C. 45;Paul v. R. R., 170 N.C. 232; Hux v. Reflector Co.,173 N.C. 100; Taylor v. Lumber Co., ibid., 110.
(266)