N. S. McATEE v. BRANNING MANUFACTURING COMPANY.

(Filed 16 September, 1914.)

1. **Master and Servant—Safe Place to Work—Trials—Negligence—Questions for Jury.**

   The plaintiff was an employee of the defendant in its power-driven manufacturing plant, and was injured while endeavoring to lace a belt in the course of his employment, on account of his hand being caught by the belt and carried to the shafting. There was evidence that the defendant furnished "blackjack" for the belt dressing, which was improper and would become very sticky, and that the plaintiff's hand, for that reason, was caught by the belt, resulting in the injury; that by the use of certain methods the belt could have been safely detached and laced in safety, and, also, that the plaintiff properly availed himself thereof; that the belt was old and worn and had broken several times on that day. *Held*, it was for the jury to determine whether the defendant had negligently failed in its duty to the plaintiff by furnishing defective material for the belt dressing, and whether such was the proximate cause of the injury; and, also, whether the plaintiff should have previously reported the defective material to the defendant under the circumstances of this case.

2. **Master and Servant—Safe Place to Work—Contributory Negligence—Trials—Questions for Jury.**

   In this case it is held that whether the plaintiff, employee of the defendant, selected an unsafe way to do the work arising within the scope of his employment when in the exercise of proper care a safe way was open to him, is a question of fact for the determination of the jury.

3. **Negligence — Contributory Negligence — Assumption of Risk — Trials—Burden of Proof.**

   When assumption of risk and contributory negligence are relied on as defenses in an action to recover damages for a personal injury alleged to have been negligently inflicted on the plaintiff, the burden of proof of such defenses is on the defendant; and under the circumstances of this case it is held that issues of fact thereon were raised, and properly left to the determination of the jury.

APPEAL by defendant from *Ferguson, J.,* at April Term, 1914, of TYRRELL.

This action was brought to recover damages for an injury to plaintiff's arm, requiring its amputation, which he alleges was caused by defendant's negligence. Plaintiff was employed by defendant, in its mill, to oil engines and machinery and to assist in keeping the machinery belts and belting, and other things connected therewith, in proper order. At the time of the injury he was lacing a belt, which he had been ordered to do by his superior, O. M. Spruill, who was the engineer. There was no one there to assist him, although when he spoke to Spruill about the condition of the belt, the latter promised to come and help him.

Section 5 of the complaint, which was admitted in the answer, was put in evidence, and reads as follows: "In the mill, and as a part thereof, and used by the defendant company in manufacturing lumber, there was on 27 May, 1912, a lath mill operated from the main shaft, and there was also a belt running on said main shaft and onto a pulley beneath. The pulley operated a sprocket wheel, and the wheel moved the dust chain, which was used to convey the sawdust, trash, and refuse matter from the lath mill to another and larger conveyor of sawdust and trash to the boiler room, there to be used as fuel."

Plaintiff alleged that the belt was old, worn, and split, which caused the edges to fray, and while he was lacing it his hand was caught or stuck in some blackjack, which was used as an oil to lubricate it. This dragged his hand and arm under the main shaft, jerking his hand off and stripping the arm to the shoulder of its flesh, leaving the bone entirely naked.

There was evidence of an attempt by the defendant to compromise with him, but these negotiations failed. The evidence also tended to show that blackjack was not the proper thing to use for oiling, as it is very sticky.

Plaintiff testified, with respect to the proper kind of dressing for the belt: "I had been using blackjack on that belt in attempting to oil it; that blackjack was put there for me to use. I do not know what blackjack is made of; when used on a belt it would accumulate on each side of the belt, and if you happened to get too much on it in warm weather, it would spread; blackjack is a sticky, gummy substance; you have to keep it warm to

166—29

use it; they never had any regular belt dressing in the mill, to be used, while I was there; every place I ever worked I had used regular belt dressing; I ran a little coal mine; we only used one belt and used belt dressing on that. I have worked in one or two sawmills, and they used belt dressing; belt dressing is pliant and has a tendency to make the belt stick or cling; it produces enough friction to run the machine. This blackjack was placed on the steam chest of the hog engine, in a small can with a paddle, for me or any one else to get to oil the machinery."

H. Corwin, president of defendant company, testified: "I have a practical knowledge of machinery, especially with respect to belt dressing. The question of belt dressing is one that people are divided upon; in our mill business, that is to say, personally, I was nowhere that I ever bought a particular dressing; never bought it for the Edenton mill or the Ahoskie mill. I didn't consider it necessary, although some others do. It is a divided question, and is controlled by the general manager. From what I can learn about this blackjack, it was a material that was furnished by the rubber oil people. I never heard of people using it on belts; it is, however, not unlike belt dressing. I have not examined that particular belt dressing, and don't know whether it is more sticky or less sticky."

O. M. Spruill, defendant's witness, testified: "I said to Mc-Atee, 'The main thing is to be careful and watch, and if there is anything that you do not understand, ask me.' When I got there the next morning his father-in-law and he had been there and oiled up. I didn't point out this particular machine that he was to work at. I don't know that the risk and hazard were explained to him. When I put a man there to work, I explain his duties to look after the belts, lubricate and oil them; to watch out and not get caught in the belts. He said that he had had experience in mills. I had no conversation about this particular place where he got hurt. That day, before he was hurt, he passed by me and said, 'Got a knife there?—the lacing has come out.' I handed him my knife; I don't know whether I told him I would be there 'presently' or not; I saw the belt after he was hurt; it was not broken; that was the first time that it had been broken

that morning, that I know of; it was the lacing that was broken that time. Whoever saw it first had the duty to put the lacing in. The lacing was of rawhide. I know about blackjack and belt dressing. I have had experience with both as long as I have been at the mill. You have to heat blackjack; if you put on a little blackjack properly heated, it would cause the belt to stick; the belt dressing does the same thing; either blackjack or belt dressing does as well as the other. The machinery was new; this particular piece was new. I saw McAtee that night and asked him how it happened; he said: 'I caught it around the belt.' I carried him to the doctor's; I was not there when the doctor operated on him; he was not crying; he had a good nerve on him; I think he was the most composed of the whole of us; he had more sense than all of us at the time. It was not necessary for Mr. McAtee to stand at this particular point all day; he went there and saw that something was the matter with the belt. I found his hand; the palm was on the shaft, between the shaft and the belt."

Plaintiff testified that the belt had broken three times during that morning, and was in very bad condition. He further said: "I went in where Mr. Spruill was, to get the lacing and punch. I said, 'Let me have your knife, Mony; that belt is broken again.' He said, 'Go ahead and be at work on it; I want to see John about something; I will be in in a few minutes to help you.' That is all the direction he gave me; I had fixed it many a time; I never laced belts until I went there; I had fixed belts before—had done it twice that morning; I thought I knew how to do it. I knew a little something about the danger of machinery. Mr. Spruill gave me orders to go there and fix it; that conversation was the only one that occurred that morning; the belt was split in the center, and the effect of the splitting made the sides ravel, and the splitting made it weaker, made the holes break, on account of the raveling; it didn't ravel in the center and it didn't ravel on the side that was not split. There was no other oil, or other dressing of any sort, in that mill."

There was evidence that the lacing could have been done safely by manipulating the idler or tightener—lifting or pulling

it up—and plaintiff stated that he pushed back the idler. He also testified: "It caught my finger between the sticky stuff and the belt. My finger would not have been caught by the belt and shaft if there hadn't been any sticky stuff there. The sticky stuff was not enough to hold my hand without the assistance of the belt, but if you have your hand in that and then touch the belt, it will hold your hand."

Charles Brush, defendant's witness, testified: "In order to lace the belt with safety, the first thing to do is to relieve the idler, the next thing is to take the belt off the pulley; when you have done that, you can then lace the belt without danger. There are two things: first, to relieve the belt, you put the belt off the pulley wheel; wherever the belt may be broken, you pull it down to you; there is nothing about that place in the mill where McAtee was at work to produce that condition, except by the idler being thrown on the belt after the pulley was on the wheel. Where I work original belt dressing is used. I have worked at Magnolia Mill and have seen it used generally, going through mills and seeing it. Belt dressing is generally used. Belt dressing is sticky; not quite as sticky as blackjack."

There was other evidence tending to support the contentions of the respective parties.

The court charged the jury, among other things, as follows:

"The burden is on the plaintiff to satisfy the jury by the greater weight of evidence that he was injured by the negligence of the defendant, that is, that the defendant was negligent in performing its duty towards the plaintiff, and that such negligence was the proximate cause of the injury; so that it becomes necessary for you to ascertain the duty the defendant owed the plaintiff. It is the duty of the employer to provide a reasonably safe place for his employee to work, and reasonably safe appliances with which to do the work required of him. There is a corresponding duty devolving upon the plaintiff, who is required to go about his work in a reasonably safe and careful manner, so as to save himself from injury, and so as not to injure the property of his employer. He is required to do his work as a prudent man would, being reasonably careful not to get injured.

The burden is on the defendant on the second and third issues to satisfy you by the greater weight of evidence—not beyond a reasonable doubt or to your full satisfaction, as in criminal cases. That rule does not apply to civil cases. Civil cases are tried upon the weight of the testimony. It is the duty of the defendant to satisfy you by the greater weight of the evidence that the plaintiff assumed the risk incident to the employment, and that he knew the conditions, and that he chose to work on under those conditions as they appeared and were known to him.

"According to the plaintiff's complaint filed in this cause, plaintiff alleges that his duties were to oil the engine and machinery and to keep the machinery, belting, etc., in order, and to do such work as he was called upon to do towards keeping the machinery running. Now, if the plaintiff failed in any way to perform the duties required of him, and such failure was the proximate cause of the hurt and injury which came to him, then it is the duty of the jury to answer the first issue 'No' and the second issue 'Yes.'

"If he failed to perform the duty which was required of him, even if they failed to furnish him proper material, you would answer it 'Yes,' if you find that that failure was the proximate cause of the injury, although you might find that the defendant was negligent.

"It was the plaintiff's duty, while in the position occupied by him, if he discovered any defects in the machinery under his charge, or in the belts, belt dressing, or other appliances connected therewith, which should be remedied, to notify the defendant thereof, in order that the same might be supplied, and if he failed to do so, and from such failure the injury which he suffered came to him as the proximate cause thereof, then it is the duty of the jury to answer the second issue 'Yes.'

"If the jury shall find from the greater weight of the evidence that it was the plaintiff's duty to keep the belts, especially in the lathe department, in good condition and order, and the plaintiff failed to keep the same in proper condition and order, and the jury shall find that such failure was the proximate cause of the plaintiff's hurt, then the jury should answer the second issue 'Yes.'

"If, when the plaintiff undertook to lace the belting, there was a safe way by which he could have done the same, and, instead of following the safe way, he adopted an unsafe way of his own accord, and as a result of the same, and as the proximate cause thereof, the injury complained of happened, then it will be the duty of the jury to answer the first issue 'No' and the second issue 'Yes.'

"There is a rule of law that where the employee has a safe and an unsafe way to do his work, if he undertakes to do it in an unsafe way, it is his misfortune and his employer is not responsible for the consequence; but in order for that rule to prevail, there must be a safe and unsafe way to perform the particular work which was required of the employee. If the material called blackjack was unsuited and dangerous to use upon the belt, and the plaintiff knew this, and then continued using the same without notifying the defendant thereof, and failed to make any request or demand to supply suitable and safe material, then I charge you that he assumed the risk if he did the work knowing the material was unsafe, if it was unsafe."

The court further charged the jury as to the legal duty of the defendant to the plaintiff and of the plaintiff to himself and the defendant, stating the general rule as to the master's duty to exercise ordinary care to furnish his servant a reasonably safe place in which to do his work and reasonably safe appliances and materials with which to do it, and as to the servant's duty to exercise corresponding care for his own safety.

The jury returned the following verdict:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged? Answer: Yes.

"2. Did the plaintiff by his own negligence contribute to his injury, as alleged? Answer: No.

"3. Did the plaintiff by his employment assume the risk, as alleged? Answer: No.

"4. What damage, if any, is plaintiff entitled to recover of the defendant? Answer: $3,750."

Judgment was entered thereon for the plaintiff, from which defendant appealed, and assigned the following errors: That

the court refused to grant the motion to nonsuit or to instruct the jury, as requested, first, that upon the whole evidence the jury should answer the first issue "No" and the second issue "Yes," and, second, that even upon plaintiff's own testimony they should answer the issues the same way.

*Mark Majette and Ward & Thompson for plaintiff.*
*Pruden & Pruden, S. B. Shepherd, T. H. Woodley, and I. M. Meekins for defendant.*

WALKER, J.  In stating the case as above we have selected those portions of the testimony which tend to establish the defense and to overthrow the case of the plaintiff, although the invariable rule is, upon a motion to nonsuit or its equivalent, a request for a peremptory instruction to find for the defendant, to reject such evidence and consider only that which makes for the plaintiff and tends to sustain his cause of action. *Hodges v. Wilson,* 165 N. C., 323.  But in no view of the evidence and the charge of the court do we see anything except a pure question of fact for the jury.  There certainly was evidence to show that the defendant had been negligent in furnishing the blackjack for oiling the belt, instead of the ordinary belt dressing, and that this failure of duty on its part was the proximate cause of the injury, even though it may have combined with some other cause.  If the plaintiff's testimony is accepted as stating the real facts, the defendant was negligent in this respect, and thereby caused the plaintiff to lose his arm after it had been horribly mangled.  The charge was in exact accordance with the law as to the legal duty of each of the parties.  It was well conceived, carefully prepared, and clearly delivered, and fully covered every phase of the case.  It leaves the impression that the learned judge who presided was absolutely and unqualifiedly fair and just to the defendant, omitting nothing that could possibly aid the jury in giving intelligent consideration to its contentions.  If either party has any right to complain of the charge, it is not the defendant, though there is no room for any criticism by either of them.

The evidence bore strongly against the defendant, even some of its own being unfavorable to it.

The duty of the master to furnish a reasonably safe place for the servant, while at his work, has been so frequently stated as scarcely to need repetition here. The latest expression of the Court upon this subject in *Ammons v. Manufacturing Co.*, 165 N. C., 449, is as follows:

"It is established by repeated adjudications in this State that an employer of labor, in the exercise of reasonable care, must provide for his employees a safe place to do their work and supply them with machinery, implements, and appliances (reasonably) safe and suitable for the work in which they are engaged, and to keep such implements, etc., in safe condition as far as this can be done by the exercise of proper care and supervision," citing *Pigford v. R. R.*, 160 N. C., 93, and other recent cases.

There was evidence that blackjack was sticky and not the proper material for oiling, and on account thereof plaintiff's hand was caught in it and injured by the belt and shafting. The negligence of defendant consisted in furnishing defective material and an old and worn belt which was in such a bad condition that it had broken three times in one morning.

Negligence should not be declared by the court as matter of law, where more than one inference may legitimately be drawn from it, or where two fair-minded persons of equal intelligence may differ in regard to it and form different conclusions of fact, one of which inferences or conclusions is favorable to the plaintiff. *Alexander v. Statesville*, 165 N. C., 527, citing *Ramsbottom v. R. R.*, 138 N. C., 38; *Graves v. R. R.*, 136 N. C., 3; *Russell v. R. R.*, 118 N. C., 1112; *Spruill v. Insurance Co.*, 120 N. C., 141.

Whether plaintiff should have reported the bad quality of the material supplied for oiling to the master depends somewhat upon his own knowledge of it, and also upon the master's existing knowledge. In the state of the evidence, the jury may well have found that the master knew more about it than his servant. The president of the defendant himself seems to have entertained some doubt as to its adaptability for the purpose of oiling the belt.

Whether the plaintiff selected a safe way to do his work, in the exercise of proper care, when two ways were open to him for the purpose, one safe and the other dangerous, was manifestly a question for the jury, as was also the question whether the bad quality of the belt dressing furnished by defendant was the proximate cause of the injury. It is true that no cause of action can arise by reason of a negligent default, unless there is some breach of a legal duty which leads to the result in continuous and natural sequence, and which a person of ordinary prudence could foresee would naturally and probably ensue. *Brewster v. Elizabeth City,* 137 N. C., 392; *Blevins v. Cotton Mills,* 150 N. C., 500; *Ramsbottom v. R. R., supra.* There must be cause and effect—a breach of a legal duty and resultant injury, with causal connection between the two, so that the one flows directly from the other; but it is for the jury to say how this is, and whether this relation which the law requires between the alleged cause and the damage really existed, unless both in the case of the negligence and its proximity to the consequent injury the facts so appear that there can be but one opinion or conclusion with regard to it, in the minds of two equally intelligent persons; and that is not the case here, but the contrary. *Harvell v. Lumber Co.,* 154 N. C., 262.

From the description given by plaintiff of the blackjack, viz., "it was sticky as tar," the jury might reasonably infer that it was dangerous to one handling a rapidly moving belt and using it for oiling or dressing purposes, and there was evidence for the plaintiff which clearly warranted the conclusion that this sticky blackjack proximately caused the injury. It would be useless to prolong the discussion. The burden was upon the defendant as to contributory negligence and assumption of risk, and there was ample evidence to support the finding of the jury upon those issues. We cannot say, as matter of law, that the evidence showed the risk and danger of using the blackjack to be so obvious that a reasonably prudent man would not, under like circumstances, have undertaken to do the particular work, and this question, therefore, was properly left to the jury. *Lloyd v. Hanes,* 126 N. C., 359; *Smith v. Baker,* L. R. App. Cases, 891.

In the case last cited, *Lord Halsbury* said: "In order to defeat a plaintiff's right to recover by the maxim relied on *(volenti non fit injuria, anglice,* 'assumption of risk'), the jury ought to be able to affirm that he consented to the particular thing being done which would involve the risk, and consented to take the risk upon himself." The present *Chief Justice,* commenting on this passage in *Lloyd v. Hanes, supra,* said: "The distinction is wide between mere 'knowledge of the danger' and 'voluntary assumption of the risk.' Besides, 'assumption of risk' is a matter of defense, analogous to and, indeed, embraced in the defense of 'contributory negligence' (*Rittenhouse v. R. R.,* 120 N. C., 544), and it is an error to direct a nonsuit. *Cox v. R. R.,* 123 N. C., 604. The jury, as *Lord Halsbury* says, must pass upon the question whether the employee voluntarily assumed the risk. It is not enough to show merely that he worked on, knowing the danger."

The charge of the court was a clear and correct statement of the principles of law applicable to the facts as the jury might find them from the evidence, and the motion for a nonsuit and the requests for instructions were properly denied.

No error.